No 9616.

## HILL ET AL. *v.* NISBET ET AL.

RAILROADS.—*Consolidation.*—*Public Policy.*—Under the statutes of this State, railroad corporations may acquire by purchase, or consolidate with, other connecting or intersecting lines; and the organization of a railroad corporation, with the view of ultimately consolidating, upon equitable terms and in accordance with the provisions of the statute, with one already existing, is not against public policy.

SAME.—*Buying Stock in other Roads.*—*Ultra Vires.*—A railroad company, having power to consolidate with connecting or intersecting lines, may, under the statute, with a view to accomplishing such consolidation and carrying out the object for which it was created, purchase the stock of such other roads.

SAME.—*Equity.*—*Estoppel.*—Persons who constituted a majority of the directors when such purchase of stock was made, can not be heard in equity to question the validity of such purchase.

SAME.— *Transfer of Stock.* — *Sureties.* — *Indemnity.* — A railroad company, merely organized, but without means or credit, purchased stock of another company, giving its notes therefor with sureties, the stock purchased being held by one of the sureties for indemnity. It failed to

pay its notes at maturity, and its stockholders prevented the making of assessments or calls upon themselves to provide a fund for such payment, the stock purchased then being of less value than was supposed when the purchase was made. Thereupon an arrangement was made by the concurrence of the purchasing company and its sureties, some of whom were its directors, whereby an association of men, including said sureties, took, in good faith, a transfer of the stock, paying therefor the notes which had been given for it.

*Held,* that the transfer of the stock was not void, and equity would not interfere to set it aside at the instance of stockholders who had paid nothing upon their stock subscriptions.

SAME.—*Forfeiture of Stock for Non-Payment of Calls.—Notice.*—The non-payment of calls upon subscriptions for capital stock, if notice of the calls and demand of payment be made, will, without other notice, warrant a forfeiture of the stock under section 3896, R. S. 1881.

PRACTICE.—*Pleading.—Complaint.—Amendment.—Interrogatories.*—When an amended complaint is filed, it supersedes not only the original complaint, but interrogatories filed with it, and in that case it is not error to refuse to require more specific answers to such interrogatories.

From the Vanderburgh Circuit Court.

*A. P. Hovey, G. V. Menzies* and *R. A. Hill,* for appellants.

*A. Iglehart, J. E. Iglehart, S. Vance, C. Denby* and *D. B. Kumler,* for appellees.

MITCHELL, J.—This suit was brought by Robert A. Hill and George W. Shanklin, against Watkins F. Nisbet, Henry F. Blount, Frederick W. Cook, William Heilman, John E. Martin, Samuel Orr, Charles E. Bennett, Daniel J. Mackey, Robert K. Dunkerson, Francis Hopkins, The Evansville Local Trade Railroad Company, The Cincinnati, Rockport and Southwestern Railway Company, and The Evansville and Terre Haute Railroad Company.

It is charged in the complaint with much particularity and detail of circumstance, that the appellants Hill and Shanklin are stockholders in the Evansville Local Trade Railroad Company, and that the other individual defendants are, some of them, officers, directors and stockholders of the two corporations first named, and the others of that last named, and that the Local Trade Company, some time before the commence-

ment of this suit, purchased two hundred and forty-four thousand dollars of the stock of the Cincinnati, Rockport and Southwestern Railway Company; that some of the appellees, directors of the Local Trade Company, purchased the bonds of the Cincinnati, etc., Co., with the property of the Local Trade Co., but claim to own the bonds individually; that, by threats and intimidation, they have compelled all other stockholders of the Local Trade Co. (except plaintiffs) to surrender their stock in that company to them.

It is charged, also, that some of the appellees, directors of the Local Trade Co., and of the Cincinnati, etc., Co., entered into a combination and conspiracy with others of the appellees, some of whom are interested in the Evansville and Terre Haute Railroad Co., intending fraudulently to give the last named company some unjust advantage over the property of the Local Trade Co.; that the defendants, not corporations, got possession, and made themselves the directors, of the Cincinnati, etc., Co., by voting the stock owned by the Local Trade Co. (which was sixty per cent. of the whole), and that neither of them personally owned any stock, and made such of themselves as were directors of the Evansville and Terre Haute Railroad Co. directors of the Cincinnati, etc., Co., and made the president and the secretary of the Terre Haute Co. the president and the secretary of the Cincinnati, etc., Co., and moved the Cincinnati, etc., Co. into the general offices of the Terre Haute Co.; that it is the design of the defendants, after defrauding all of the other stockholders of the several companies out of their stock, to connect the properties, making one property of great value, to wit, of the value of one million dollars, and then to own the same; that since this suit defendants are seeking to defeat the court in the equitable adjustment between the parties herein, and to that end have subscribed stock in the Local Trade Co., but not *bona fide;* have made assessments upon the stock of the plaintiffs, not *bona fide,* but for the purpose of hindering the plaintiffs in this suit; that the Local Trade Co. is being run in debt to

the Terre Haute Co. by contracts made by directors of the Terre Haute Co. for the Local Trade Co.; that the defendants have attempted, clandestinely, to consolidate the Local Trade Co. with the Cincinnati, etc., Co., and another, without the knowledge or consent of the stockholders of either of the companies, and have attempted to put a mortgage upon the property for the sum of six hundred thousand dollars, to create a new stock in the sum of eight hundred thousand dollars, and are dividing the bonds and stock so created among themselves as the owners in entirety of these corporations, and are diverting the properties and the proceeds thereof, of the Local Trade and the Cincinnati, etc., Companies, to the payment of interest on the bonds and dividends on the stock so created and divided among themselves; that the defendants have turned over the properties of these companies to the pretended consolidated company, and are now attempting to sell the consolidated company to strangers, and are paying the expenses of this litigation out of the properties of these companies. Wherefore they pray that defendants having any of the bonds be declared trustees; that all sales of such bonds by them be declared void, and that such bonds be cancelled as paid-off indebtedness; that all assignments of Local Trade stock, compelled by threats and intimidation and held by them, be held in trust; that all subscriptions to Local Trade stock that were procured or managed by officers of the Terre Haute Co. be declared void; that the sale of any corporate property by directors to themselves be declared void; that the pretended consolidation and the mortgage afterwards be declared void; that the assets of the companies be marshalled and their debts ascertained; that if the attempted consolidation shall be found legal, the court find who are the stockholders, and the share of each; for a receiver and all other proper relief.

The defences which the appellees set up to defeat the plaintiffs' right to the relief demanded, and which are material to be stated, are pleaded in two affirmative answers. The substance of the first, stated in an abbreviated form, is, that

Hill *et al. v.* Nisbet *et al.*

the $244,000 of the capital stock of the Cincinnati, Rockport and Southwestern Railway Company was purchased for $50,-000, for which the notes of the Local Trade Railroad Company were given, but as the company had nothing but a paper organization, no money, property or credit, the defendants Nisbet, Heilman, Cook and Blount became the sureties on its notes, and by agreement with its board of directors, the stock purchased was transferred to Heilman, to be held by him as collateral security until the $50,000 was paid, and the sureties released. After this purchase, the stockholders of the Local Trade Company, including the plaintiffs, refused to allow any assessments to be made on their stock, leaving the company without any ability to meet its notes and relieve its sureties. The sureties, finding themselves in this situation, deemed it best for the Local Trade Company and themselves that they should secure the control of the Cincinnati, etc., Railway Company, with a view of disposing of it and escaping loss, and accordingly they purchased, on their individual account and with their own means, a number of its bonds and other indebtedness and a quantity of its stock. Subsequently, by an arrangement which was approved by the board of directors of the Local Trade Company, the $244,000 of stock held by it was sold and transferred to Nisbet, Heilman, Cook and Blount, upon the consideration that they would pay the $50,000 upon which they had become its sureties, and save it harmless from any further liability on that account, and later these gentlemen transferred that, with all the other interests which they had purchased in the Cincinnati, etc., Co., to Charles Bennett and others associated with him. The transfer of the stock to Nisbet and his associates was made to enable them to transfer it to Bennett and his associates in pursuance of a previous agreement.

It is averred, that in all this Nisbet, Heilman, Cook and Blount derived no personal benefit whatever except to be relieved from their obligation to pay the $50,000, and that the Local Trade Company and its stockholders suffered no in-

jury whatever, and that it was thereby released from the payment of its obligation which it was wholly unable to meet, and that neither the plaintiffs nor the . Local Trade Company ever had or were to have any right or title to the stock sold, except upon the contingency that it should pay the $50,000 for which it had given its notes; that it never had paid, and was wholly unable to pay, anything on its notes given for the stock, and that the stock sold was of less value than the company realized for it, and that the best interests of the Local Trade Co., required that the sale should be made; that by means of the sale of the stock owned by the Local Trade Co. and the other stock and interests which Nisbet and the other defendants associated with him had acquired in the Cincinnati, etc., Co., to Bennett and his associates, an arrangement was effected whereby a large amount of solvent subscriptions were obtained to the stock of the Local Trade Co., by means of which it was enabled to build and complete a large part of its road in a first-class manner, and that after building a portion of its road, by the consent of all its stockholders, and upon terms mutually agreed upon with the other companies, it was duly consolidated according to the terms of the statute, with two other railway companies, under the name of the Evansville, Rockport and Eastern Railway Company, resulting in securing to the city of Evansville, in whose interest the Local Trade Co. was organized, a well built and well equipped railroad, seventy-two miles in length, all of which it is averred has resulted in great benefit to the stockholders of the Local Trade Co.

The next affirmative answer alleges that the plaintiffs had paid, one of them nothing, and the other substantially nothing on their stock, or on the subscriptions therefor. It also alleges, in particular detail, giving dates, etc., that various assessments, or calls, had been, from time to time, made on all the stock of stockholders of .the Local Trade Company, by its board of directors, of which the plaintiffs were duly notified, and that demand of payment had from time to time

Hill *et al. v.* Nisbet *et al.*

been made on them, and that they had failed and refused to pay the calls, and that on that account its board of directors had by resolution duly entered of record declared the plaintiffs' stock forfeited, and that, by reason of such forfeiture of their stock, they had no right to, or interest in maintaining the action they were prosecuting. The forfeiture was declared pending the suit. Both of these answers were held good on demurrer.

To the second paragraph, which is the first affirmative answer, the plaintiffs set up, in substance, that the consolidation of the several railroad companies, as alleged in the answer, was illegal for want of proper notice, and that it was without authority, and that no record of such consolidation had been made, etc.

To the answer alleging the assessment and forfeiture of their stock, the plaintiffs replied as follows:

" That the said Evansville Local Trade Railroad Company, in making the demand for the said calls mentioned in the said paragraph of said answer, did not state or intimate any intention whatever to forfeit either the payments heretofore made or the stock of the plaintiffs mentioned in said answer, upon the non-payment or in consequence of the non-payment of said calls, and that said plaintiffs have never had any notice of the intention of said board of directors to make said forfeitures, nor have they had notice of any time or place where said board of directors would meet to make said forfeitures."

Both of these replies went out on demurrer, and, refusing to make any further reply, judgment was rendered against the plaintiffs for costs, and from that judgment they bring this appeal.

The questions necessary to a proper determination of the case may all be comprehended under the following statement:

1. Was the purchase of the two hundred and forty-four thousand dollars of the stock of the Cincinnati, Rockport and Southwestern Railway Company, by the Evansville Local

Trade Railroad Company, *ultra vires?* and, if it was, are the appellees in a situation to assert that fact?

2. If the Evansville Local Trade Railroad Company, by the purchase of the stock in the manner and under the circumstances set out, acquired in it a right, either legal or equitable, was the sale of it by Nisbet and his associates to Bennett and his associates, under the circumstances and on account of their relations to the Local Trade Co., absolutely void, or only voidable? and,

3. If it was voidable only, do the facts presented in the whole record show such equities in favor of the appellants, and such injury to them, as entitle them to a decree of the court avoiding it?

There are several collateral questions more or less involved, but the settlement of the controversy between the parties will depend upon the conclusions which shall be reached upon the questions stated.

The Evansville Local Trade Railroad Company was organized under the general statute of the State for the organization of railroads, with the purpose in view of constructing a railroad from the city of Evansville to some point of connection with, or intersection of, the Cincinnati, Rockport and Southwestern Railway, and from the whole record it may be gathered that it was within the object of the organization to become ultimately consolidated with the latter company. The general purpose being to promote the commercial interests of the city of Evansville, and to create a railroad corporation whose business would prove remunerative to its stockholders.

As, under the statutes of the State, railroad corporations may be organized, and after organization they may acquire by purchase, or consolidate with, other connecting or intersecting lines, it can not be said that the organization of a railroad corporation, with a view of ultimately becoming consolidated, upon equitable terms and in accordance with the provisions of the statute, with one already existing, is against public policy.

At the time of the purchase of the stock in question the Local Trade Railroad Company was in its incipiency, not having progressed farther, perhaps, than a paper organization, and the subscription of $70,750 to its stock.

It does not appear whether its line had been located or not, but if this was done it seems to be granted that no further progress had been made. It seems to be conceded on all hands, too, that the accomplishment of the end had in view by its projectors would be greatly facilitated by the acquisition by it of a controlling interest in the Cincinnati, etc., Co., with the ultimate purpose in view of consolidating the two properties, thereby making one of more value to the stockholders and of more efficiency for public good.

The proposition is stated broadly in many cases, that one corporation can not, without express statutory authority, become the owner of any portion of the stock of another corporation. *Pearce* v. *Madison, etc., R. R. Co.*, 21 How. 441; *Mutual Savings Bank, etc., Ass'n* v. *Meridian Agency Co.*, 24 Conn. 159; *Franklin Co.* v. *Lewiston Savings Bank*, 68 Maine, 43; *Central Railroad Co.* v. *Collins*, 40 Ga. 582; *Sumner* v. *Marcy*, 3 Wood. & M. 105; *Franklin Bank* v. *Commercial Bank*, 36 Ohio St. 350 (38 Am. R. 594).

It is said that if this were not so, a banking corporation could become the operator of a railroad, or a railroad corporation might engage in the banking business. It must be said at once, that where the purchase of stock in one corporation by another amounts to engaging in a business other than that authorized by its charter, such purchase is *ultra vires*, and this is so, not because the purchase is stock, but because the business is outside the scope of its charter.

Whether the purchase of stock in one corporation by another is *ultra vires* or not, must depend upon the purpose for which the purchase was made, and whether such purchase was, under all the circumstances, a necessary or reasonable means of carrying out the object for which the corporation was created, or one which under the statute it might accomplish.

Section 3951, R. S. 1881, authorizes any railroad corpora-tion organized under the provisions of the general railroad law, "to acquire, by purchase or contract, the road, road-bed, real and personal property, rights and franchises of any other railroad corporation or corporations which may cross or intersect" its line; and if in any case it should appear to be a necessary or reasonable means to that end, no reason is perceived why it might not be accomplished by purchasing the stock, instead of purchasing the corporate property directly. In short, the purchase of stock by one railroad corporation in another will be upheld whenever it is a necessary or reason-able means to the accomplishment of an end proposed, which is within the scope of its statutory powers.

Keeping in view the averments in the complaint, from which the purpose for which the stock was purchased may be fairly inferred, and considering the broad and comprehensive powers, conferred by the statutes on railroad corporations, authorizing them to acquire real and personal property " necessary to accomplish the objects for which the corporation is created," and to acquire the property of, and consolidate with uncompleted connecting and intersecting lines, and we can-not say that the purchase of the stock was unauthorized. R. S. 1881, sections 3903, 3951.

The presumption must be indulged that the purchase of the stock of the Cincinnati, etc., Co. by the Local Trade Co., was a necessary or reasonable means to the accomplishment of the object which the corporation had in view, and that that object was within some one of its statutory powers. *Ryan* v. *Leavenworth, etc., R. W. Co.*, 21 Kan. 365. The facts in the case cited were that the Leavenworth, Atchison and North-western Railway Company was organized to construct a rail-road from Leavenworth to Atchison, and the Missouri River Railroad Company owned a railroad running from Leaven-worth to Wyandotte. The company first named purchased from the county and city of Leavenworth $250,000 of the stock of the last named company, with a view of having a con-

tinuous line from Atchison to Wyandotte, and the contention was made there, as here, that the purchase of the stock was *ultra vires.* The learned judge, pronouncing the judgment of the court in that case, after referring to the statutes of the State of Kansas, which are similar to ours, said: "In view of these powers so conferred by law, the act of purchasing said stock by the Leavenworth, Atchison and Northwestern Railroad Company of the county and city of Leavenworth, was not *ultra vires.* While it is not shown by the petition that the purchase of this stock was necessary for the purposes of the corporation, in the absence of any statement to the contrary, we are to presume the company was acting within the terms of its authority and power."

CHURCH, J., in *City of Bridgeport* v. *Housatonuc R. R. Co.,* 15 Conn. 475, said: "It has long been an established principle in the law of corporations, that they may exercise all the powers within the fair intent and purpose of their creation. * * * In doing this, they must have a choice of means adapted to ends, and are not to be confined to any one mode of operation."

Aside from the conclusion already reached as to the power of the Local Trade Co. to purchase the stock of the other corporation, there can be little doubt that the appellees who make this question are in no position to insist upon the want of power of the corporation, in which they were at the time a majority of the directors, to make the purchase.

The stock having been actually purchased by the corporation while they were its directors, and it being charged that they have improperly disposed of it, it must be held as to them, however it might have been as to others, that the purchase was valid.

At the time the stock was purchased by or for the corporation, some, if not all, of these appellees were on its board of directors, and while the stock was purchased in its name and for its ultimate benefit, the title to it was very properly transferred to Heilman as an indemnity against loss on account of

their having become the sureties for the purchase-price. The debt became due, was renewed, and became due again. The corporation had neither money, property nor credit. The stockholders refused to permit assessments to be made on their stock, so as to provide a fund out of which to pay the $50,000 and interest then due, and the stock purchased was found to be much less valuable than it was supposed to be at the time of the purchase.

At this juncture, Bennett and his associates agreed to purchase the stock provided the legal title in Heilman. and the equitable right of the company could be transferred to them, and a contract was accordingly negotiated between Nisbet, for the company on the one hand, and Bennett, for himself and associates on the other.

Bennett and his associates were making the purchase of the stock in the Cincinnati, etc., Co., with a view to a reorganization of the Local Trade Co., which seems to have been abandoned by its friends and existed only in name. Ultimately, they intended to, and did, consolidate the two corporations, built and equipped the road in a substantial manner, and this was their known purpose in making the purchase.

The board of directors of the Local Trade Co., embracing all its stockholders except the plaintiffs, entered of record an order for the transfer of the stock in question to Nisbet, Heilman, Cook and Blount, they agreeing to pay the $50,000 and interest, which was the full purchase-price, all of which was still owing by the company. This order was made so as to enable Heilman and his associates to carry out the contract negotiated by Nisbet with Bennett and his associates, who agreed, in effect, to pay exactly what the corporation paid, or what was to be paid by Heilman and his associates. Heilman was, at the time of these several transfers, a director in the Local Trade Co., and was also interested with Bennett and his associates in the purchase of the stock, and this fact is relied on to make the transaction void so far as the stockholders of the Local Trade Co. are concerned.

The demurrer admits that the transfers were made in good faith, that Heilman and his associates had no profit or other advantage from the transactions except to relieve themselves from the burden hanging over their heads, and that in no other way could this have been done.

The argument, in effect, is, that because of the relation in which Heilman and some of those associated with him stood to the corporation and the transactions involved, the purchasers of the stock are trustees for the benefit of the Local Trade Co. and its stockholders, and that they must be held to account as such.

That the directors of a corporation are as to it, and its property and stockholders, trustees, can not be disputed, and that their dealings with the corporate property confided to their care will be subjected to the severest scrutiny when challenged in a court of equity, is a doctrine resting on the highest principles of public policy, and one which has often been recognized by this and other courts, but neither this nor any other court, so far as we are aware, has ever held that a transaction such as this is shown to be, having upon it no impress of unfairness or characteristic of actual fraud, was void.

That the transaction was not void is maintained in the case of *Twin-Lick Oil Co.* v. *Marbury*, 1 Otto, 587, which in its facts is strikingly analogous, and which in principle conclusively settles the point we are considering.

The case of *Kitchen* v. *St. Louis, etc., R. W. Co.*, 69 Mo. 224, is an authority directly in point; as is also *Merrick* v. *Peru Coal Co.*, 61 Ill. 472. In the case of *Kitchen* v. *St. Louis, etc., R. W. Co.*, *supra*, it was held that although the trustees who made the sale were also members of the association which made the purchase, this fact did not render the sale void, but gave the company the right to redeem, provided the right was exercised within a reasonable time and before the intervention of new equities. See, also, *Bristol Milling, etc., Co.* v. *Probasco*, 64 Ind. 406; *Ward* v. *Polk*, 70

Ind. 309. Such contracts are voidable and not void. *Pratt* v. *Luther,* 45 Ind. 250; *Port* v. *Russell,* 36 Ind. 60 (10 Am. R. 5).

The contract of sale here involved was negotiated by Nisbet, on behalf of the corporation, with Bennett, and the principle that an agent or trustee can not contract with himself is thereby avoided, as in the case of *Twin-Lick Oil Co.* v. *Marbury, supra.*

As the contract was not void, it remains to be determined whether upon the facts stated the appellants may avoid it.

It was said in the case of *Piatt* v. *Smith,* 12 Ohio St. 561: "It is always incumbent upon the party asking the interposition of a court of equity in his behalf, to show a perfect equity. That is to say, the party asking relief in a court of equity must present such a state of facts, as, in equity and good conscience, would, according to the rules of courts of equity, seem to require the granting of relief, to prevent an undue advantage being gained of him by another, or to prevent his suffering an irreparable injury; and that, without being chargeable to his own wrong, or even delinquency." *Howard* v. *Babcock,* 7 Ohio, 405.

The rule is well established that, unless under peculiar and exceptional circumstances, a court of equity will not intervene to set aside a transaction in itself voidable only, unless it appears that the complainant has sustained or.may sustain some damage. Besides, it appears here that new rights have been acquired apparently without protest or objection from the appellants, and as was said in *Samuel* v. *Holladay,* 1 Woolw. 400, a stockholder in a corporation can not stand by and see an evil done which he claims to be illegal, and then hold the persons responsible who had been involved in it.

In the case of *Busey* v. *Hooper,* 35 Md. 15 (6 Am. R. 350), certain stockholders asserted that a fraudulent combination had been formed to deprive them of their rights in the corporation. Having paid nothing on their stock, the court held they had no right to ask its intervention.

The appellees who sold the stock having been, by the

refusal of the appellants and other stockholders to permit an assessment, apparently compelled to dispose of the stock, or suffer pecuniary loss, and having obtained for it, so far as appears, its full value, all of which went to the benefit of the corporation to pay its debt, the sale should not be set aside because one of the directors was interested in the purchase.

Assuming that upon the face of the bill a case is presented which entitles the appellants to invoke the interposition of a court of equity for their protection, as existing stockholders at the time it was filed, it may well be questioned whether during the progress of the cause the jurisdiction of the court to administer relief could be arrested by the alleged forfeiture of appellants' stock. But a forfeiture having been declared, and that fact having been set up as an answer, the appellants asked the judgment of the court upon its legality as made.

The contention of the appellants is that the collection of assessments on stock, and forfeiture for non-payment of assessments, are cumulative remedies, and that as it is the primary duty of the directors of a corporation to enforce the collection of assessments, so as to replenish the treasury, a notice that an assessment has been made, and a demand of payment, do not imply, without further notice, that a forfeiture may be declared in the event of non-payment. It is insisted that the defaulting stockholder, in addition to the notice of assessment and demand of payment, is entitled to express notice that non-payment will be followed by forfeiture.

Section 3896, R. S. 1881, governing the subject of assessments and forfeitures of railroad stock, may be conveniently and accurately paraphrased as follows :

" The directors may call in and demand from the stockholders, respectively, any sums of money by them subscribed, in equal instalments of not exceeding ten per cent. per month, under the penalty of forfeiture of the whole of their stock subscribed, with all previous payments thereon, if such stockholders shall not pay any such monthly instalments within thirty days after demand for the payment thereof."

Under this statute, it has been held that no notice or demand is necessary, except where the forfeiture of the stock is sought to be enforced. *Heaston* v. *Cincinnati, etc., R. R. Co.,* 16 Ind. 275 ; *Ohio, etc., R. R. Co.* v. *Cramer,* 23 Ind. 490; *Smith* v. *Indiana, etc., R. W. Co.,* 12 Ind. 61. This statute, in effect, became part of the contract between the corporation and the stockholder.

The subscribers to the stock of a railroad must take notice of the acts of the directors as to calls, and when notice is given, or demand made, for the payment of an assessment they may conclude, without more, that a forfeiture may, at the election of the corporation, follow for non-payment of calls legally made.

The case of a forfeiture of the term of a tenant under a lease is in many respects analogous. In such cases, the landlord may elect to sue for rent due without notice or demand, but he may, instead of suing for rent in a proper case, give notice or make demand according to law, and then insist upon a forfeiture. *Meni* v. *Rathbone,* 21 Ind. 454; *Jenkins* v. *Jenkins,* 63 Ind. 415, and cases cited.

The statutory requirement must be strictly pursued, but the statute does not require that the demand or notice must be accompanied by a further notice that forfeiture will follow in case of non-payment.

Forfeiture of insurance policies for non-payment of assessments are also analogous in some respects, and it has been held that notice of the assessment is all that is required. *American Ins. Co.* v. *Henley,* 60 Ind. 515 ; *Lycoming Fire Ins. Co.* v. *Rought,* 97 Pa. St. 415.

Whether the consolidation of the several corporations was regularly made or not, was not material.

The appellees had answered a great number of interrogatories filed with the original complaint, which, with the accompanying interrogatories, were superseded by the amended complaint, which was subsequently filed. It was not error

for the court to refuse to require them to be answered more specifically. We find no error in the record.

Judgment affirmed, with costs.

Filed Feb. 21, 1885.