Otis v. Gregory.

Filed Sept. 20, 1887.

----

No. 12,723.

## OTIS v. GREGORY.

QUIETING TITLE.—*Complaint.*—*Necessary Allegations.*—A complaint to quiet title must show, either by direct averment or by the statement of facts from which the inference necessarily arises, that the defendant's claim is adverse, or unfounded, and a cloud upon the plaintiff's title.

MORTGAGE.—*Cancellation.*—*Equitable Defences.*—*Maxim,* " *He Who Seeks Equity Must do Equity.*"—*Application of.*—A plaintiff who shows himself otherwise entitled to the aid of a court of equity will not, under the maxim that he who seeks equity must do equity, be denied relief, unless the defendant brings forward some corresponding equity, growing out of the subject-matter then in suit, which would, at some time subsequent to the transaction, in some form of proceeding, entitle him to a remedy against the other party, in respect to the subject-matter involved.

SAME.—*Married Woman.*—*Mortgage Without Husband Joining.*—*Lex Situs.*— *Vendor's Lien.*—*Pleading.*—*Practice.*—A mortgage executed in Michigan by a married woman, without her husband joining, upon her separate land in this State, is void, and, of itself, creates no equity which the courts can recognize; but if the debt intended to be secured thereby is purchase-money, the mortgagee may, by reason of his vendor's lien, in a proceeding by the mortgagor to cancel the mortgage, obtain affirmative relief by cross-complaint, or by setting up the facts by way of answer may, unless his equity is acknowledged, defeat the plaintiff's right to relief.

SAME.—*Vendor's Lien.*—*Equitable Subrogation.*—Where a party who holds a valid mortgage upon land releases it, in order that the owner may sell the property and invest the entire proceeds in another tract, he to take a mortgage upon the latter for the amount of his debt, he in effect pays a part of the purchase-money, and, if the mortgage taken is void, will be subrogated to that extent to the rights of the vendor.

From the LaPorte Circuit Court.

*D. J. Wile, F. E. Osborn* and *J. B. Langworthy,* for appellant.

*M. Nye,* for appellee.

MITCHELL, J.—This was an action by Mary E. Gregory against Amos Otis to quiet title to real estate. The plaintiff alleged that she was the owner, in fee-simple, of a certain particularly described tract of land in LaPorte county, and that the defendant had, or claimed to have, some interest in or claim to the same, or some part thereof, of the nature of which she averred she was not advised. She alleged that the defendant was giving out to the public that he had some claim to the real estate described, by reason of which she was damaged, in that it prevented her from making sale of her land. Prayer that the plaintiff's title might be quieted, and for all other proper relief.

The foregoing summary of the complaint discloses, that neither directly nor by necessary inference does it appear that the defendant was asserting any hostile or adverse title to the real estate in question, nor does it appear that the claim which the defendant was setting up was unfounded and cast a cloud upon the plaintiff's title. Admitting every

averment in the complaint to be true, there is nothing to invoke the jurisdiction of a court of equity to quiet the plaintiff's title.   For all that appears, the defendant may have had a valid mortgage on the land, and this may have presented the only obstacle to the sale of the real estate.

It has often been held, and the rule is uniform, that, although the plaintiff in an action to quiet title need not state in his complaint with much particularity the nature of the title or interest claimed by the defendant in or to the real estate in controversy, the complaint must show, either by direct averment or by the statement of facts from which the inference necessarily arises, that the defendant's claim is adverse to, or is unfounded and a cloud upon, the plaintiff's title.   *Second Nat'l Bank* v. *Corey*, .94 Ind. 457 ; *Conger* v. *Miller*, 104 Ind. 592 ; *Rausch* v. *Trustees, etc.*, 107 Ind. 1.

The complaint in the case before us can not be distinguished from that in *Second Nat'l Bank* v. *Corey, supra*.   The conclusion follows that the assignment of error, that the complaint does not state facts sufficient to constitute a cause of action, is well made.

As it may serve to bring the controversy between the parties to a conclusion, we will consider the questions made upon the answer to which the court sustained a demurrer. Without having made any question upon the complaint, the defendant answered, in substance, that in the year 1873 the plaintiff was a married woman, residing in the State of Michigan, and the owner in her own right of certain real property in that State.   That by the statute of the State of Michigan (which is set out in the answer), married women are empowered to contract with reference to, and to convey and mortgage, their separate real estate in all respects as if they were unmarried.   It is averred that on the 15th day of October, 1873, the plaintiff and her husband became indebted to the defendant in the sum of four hundred and sixty dollars.   This indebtedness was secured by a mortgage executed by the plaintiff on her separate property in Michigan.   After-

Otis v. Gregory.

ward, in June, 1874, the plaintiff sold her Michigan prop-
erty and purchased that in question in LaPorte county. To
enable her to make the purchase, it became necessary that she
should be able to use the entire purchase-money arising from
the sale of the Michigan property, including the amount due
the defendant on his mortgage debt. The defendant agreed
that he would release his mortgage on the property in Mich-
igan, and permit the plaintiff to use the amount due him in
paying the purchase-money of the LaPorte county property,
she agreeing to give him a mortgage on the latter when the
transaction should be completed. The defendant released his
mortgage accordingly, and took a mortgage, executed by the
plaintiff, without the joinder therein of her husband, upon
the property described in the complaint. Mrs. Gregory paid
for the property purchased with the proceeds of that sold.
This last mortgage, it is averred, was executed in the State
of Michigan, both parties believing in good faith at the time,
that the law of Indiana, as in Michigan, empowered a mar-
ried woman to encumber her separate real estate without the
joinder of her husband. But for such belief, the defendant
says he would not have released his mortgage on the Mich-
igan property and received that on the property in Indiana.

It appears that the only interest which the defendant claims
in the land in question is such as results from the foregoing
facts. It further appears that the only purpose of this ac-
tion is to secure a cancellation of the mortgage thus taken,
and a removal of the apparent cloud or encumbrance which
it casts upon the plaintiff's title.

The appellant claims that the circumstances are such as
that it would be inequitable to cancel his mortgage, without
first requiring payment of the debt which it was intended to
secure, or otherwise placing him in as favorable a position as
he would have occupied in case he had received a valid mort-
gage. In other words, his position is, since Mrs. Gregory
has come into a court of equity, asking its aid to cancel an
alleged invalid mortgage, which was made and received in

good faith, she must accept the aid of the court in subordination to the maxim, " He who seeks equity must do equity." That this maxim, in its true spirit and purpose, expresses the principle which lies at the foundation of all equity proceedings, guiding and governing courts of equity at every stage in the administration of justice, is one of the distinguishing excellencies underlying all chancery jurisdiction.    Pom. Eq. Jur., sections 120, 363.

In a court of equity the principle thus expressed is as authoritative as though it were enacted into positive law.    In its proper sense it is a universal rule, binding upon parties and courts in all controversies in which complete justice can only be accomplished by its application, within reasonable and recognized rules.

Plowden, speaking of the quality of maxims, in *Colthirst* v. *Bejushin*, 1 Plow. 21, 27, says :    " Further, there are two principal things from whence arguments may be drawn, that is to say, our maxims, and reason, which is the mother of all laws.    But maxims are the foundations of the law, and the conclusions of reason, and therefore they ought not to be impugned, but always to be admitted; yet these maxims may by the help of reason, be compared together, and set one against another (although they do not vary), where it may be distinguished by reason that a thing is nearer to one maxim than to another, or placed between two maxims; nevertheless they ought never to be impeached or impugned, but always be observed and held as firm principles and authorities of themselves."

Accepting the maxim above referred to as in the highest degree authoritative, it becomes proper to inquire concerning the manner of its application in the practical adjustment of controversies between parties.

What is the " equity " which a party appealing to a court of chancery must do before he is entitled to relief?    Can a party who becomes plaintiff in a court of equity be compelled, as the price of the relief demanded, to surrender to the de-

Otis v. Gregory.

fendant something which the latter could not have compelled by some proceeding, either at law or in equity, in case the former had not appealed to the court? If he can, then the rule that he who would have. equity must do equity depends for its application in each case upon the arbitrary notions of the chancellor concerning the equities between the parties. The effect of such an application of the rule would inevitably, in many cases, be to refuse aid to which a plaintiff would be entitled, except upon condition that the latter should concede to the defendant some supposed equitable right which was not enforceable at law or cognizable in a court of equity, and, hence, not within any description of a legal or equitable right.

So far as any general rule on the subject can be laid down, it may, with assurance, be stated, that a plaintiff, who shows himself otherwise entitled to the aid of a court of equity, will not be denied relief, unless the defendant brings forward some corresponding equity, growing out of the subject-matter then in suit, which would at some time subsequent to the transaction, in some form of proceeding, entitle him to a remedy against the other party in respect to the subject-matter involved. It can not be maintained in reason that a defendant, to whom the plaintiff is under some imperfect obligation of a merely moral character, which never had ripened, and never could ripen into an enforceable legal or equitable right, may nevertheless, for some merely sinister purpose, defeat an equity to which a plaintiff is entitled. If the defendant, at no time subsequent to the transaction which formed the subject-matter of the plaintiff's bill, had, and could not thereafter acquire, in respect to that transaction, any right to relief, cognizable in a court of equity or otherwise, no reason is perceived why the plaintiff should be denied an equitable remedy to which he would otherwise be entitled. As was said by the learned vice-chancellor, in *Hanson* v. *Keating*, 4 Hare, 1: "The court can never lawfully impose merely arbitrary conditions upon a

plaintiff, only because he stands in that position upon the record, but can only require him to give the defendant that which by the law of the court, independently of the mere position of the parties on the record, is the right of the defendant in respect of the subject of the suit." Or, as the same learned judge said in *Neesom* v. *Clarkson*, 4 Hare, 97, 101 : "I think it may be generally said, that, unless the equity which the defendant claims from the plaintiff is one which the defendant might enforce by bill, it is not a term which the court has a right to impose on the plaintiff." It may be admitted that there are cases which do not seem to fall within the foregoing general principles; but such cases must be regarded as of a special and exceptional character. Pom. Eq. Jur., sections 385, 386. The general doctrine as stated in *Hanson* v. *Keating*, and *Neesom* v. *Clarkson, supra,* meets the approval of our judgment.

It should be observed that the rule embraces and applies only to the one matter which is the subject of the suit, and not to distinct transactions having no proper relation to nor connection with the subject-matter of the action. The plaintiff who seeks the aid of a court of equity, must submit to the condition that all corresponding equities of the character above described, in favor of the defendant, growing out of the subject-matter or transaction involved in the suit, may be fully and finally adjusted. *Tuthill* v. *Morris,* 81 N. Y. 94, 100.

With the foregoing principles in view, we proceed to consider the equities of the respective parties to the record. Since conveyances and mortgages of real estate take effect according to the law of the place where the land conveyed or mortgaged is situate, it follows, regardless of the intention or good faith of the parties, that the law of this State must determine the validity of the mortgage which is sought to be cancelled. *Freeland* v. *Charnley,* 80 Ind. 132 ; *Bethell* v. *Bethell,* 92 Ind. 318; *Swank* v. *Hufnagle, ante,* p. 453; 1 Jones Mort., section 823.

Otis *v.* Gregory.

The statute of Indiana, touching the marriage relation, in force at the time the mortgage in question was executed, provided that a married woman should have no power to encumber or convey her land, except by deed in which her husband should join. 1 R. S. 1876, 550 (section 5117, R. S. 1881). '

Since the only power of married women to convey or encumber their real estate is derived from the statute, it follows necessarily that the separate deed of the wife, purporting to mortgage her land within this State, was absolutely void. *Mattox* v. *Hightshue*, 39 Ind. 95; *Scranton* v. *Stewart*, 52 Ind. 68. It was without legal force, and of itself created no equity which the courts can recognize or protect. As was said in *Baxter* v. *Bodkin*, 25 Ind. 172: "In the nature of things, it must be impossible for a right in equity to arise out of an instrument which binds nobody." *Luntz* v. *Greve*, 102 Ind. 173, 183; *Hamar* v. *Medsker*, 60 Ind. 413, and cases cited; *Abdil* v. *Abdil*, 26 Ind. 287; *Williams* v. *Wilbur*, 67 Ind. 42.

The invalidity of the mortgage having arisen out of a want of capacity to make the instrument, a court of equity is powerless to afford the defendant any aid in respect to the invalid instrument. *Glidden* v. *Strupler*, 52 Pa. St. 400. The case stands as if no mortgage had ever in fact been attempted, so far as the appellant is concerned. Whatever may have been formerly held in other jurisdictions in respect to the cancellation of void contracts, the doctrine that a party to an instrument, which is of no legal force or validity whatever, may ask the aid of a court of equity in procuring its surrender and cancellation, is now fully set at rest here. It is regarded as against conscience, that one party should persist in holding a deed or other instrument against another of which he can make no possible use except as a means of embarrassing his adversary. *Huston* v. *Roosa*, 43 Ind. 517; *Hardy* v. *Brier*, 91 Ind. 91; 1 Story Eq. Jur., section 700; 3 Pom. Eq. Jur., section 1377.

The mortgage in question, although absolutely void, was, nevertheless, an apparent cloud or encumbrance on the plaintiff's title. She had, therefore, a clear equitable right to invoke the aid of the court to procure its cancellation. This was the appellee's equity; it was the equity which she sought the aid of the court to enforce. The mortgage which the plaintiff sought to have cancelled grew out of a transaction in which the appellant undertook to aid her in purchasing the land covered by the void mortgage. The subject-matter of the suit, therefore, comprehended and brought within the jurisdiction of the court the entire transaction. When a court of equity once obtains rightful jurisdiction of a subject-matter, it avails itself of the opportunity to investigate and decide all incidental matters necessary to enable it to make a full and final determination of the whole controversy. With the equities of the plaintiff, it settles any and all legal or equitable rights of the defendant pertaining to the same subject-matter, and thus avoids a multiplicity of suits. *Souder's Appeal*, 57 Pa. St. 498.

Taking the facts put forward in the answer as true, has the appellant any equity within the principles already laid down which the court may require the appellee to recognize, as a condition upon which it will afford her the relief to which we have seen she is entitled? Has the appellant an equitable right, upon the facts stated in his answer, to maintain a bill to declare and enforce a lien against the appellee's LaPorte county property? If he has, the maxim " He who seeks equity must do equity" imperatively requires that relief be denied the plaintiff, except upon condition that she consent that the decree shall also adjust the corresponding equities of the appellant. That the appellant has a right, cognizable in a court of equity, growing out of the transaction involved in the suit, is demonstrable upon authorities which leave the subject in no sort of doubt.

A vendor's lien for unpaid purchase-money will be declared and enforced against property purchased and held by a mar-

ried woman precisely as in the case of a person who is under no legal disability. *Perry* v. *Roberts,* 30 Ind. 244; *Haugh* v. *Blythe,* 20 Ind. 24; *Huffman* v. *Cauble,* 86 Ind. 591; *Martin* v. *Cauble,* 72 Ind. 67 ; *Haskell* v. *Scott,* 56 Ind. 564.

The substance of the transaction between Mrs. Gregory and the appellant was that the former became indebted to the latter for a specified amount of the purchase-money due on the LaPorte county land, for which indebtedness the appellant received no security. If, at the time Mrs. Gregory sold her Michigan property, she had paid the appellant the amount of his secured debt, and the latter had at her request applied the money so paid upon the purchase price of the LaPorte county land, it is clear, upon authority, that, as between the parties, a vendor's lien would have resulted by implication of law in favor of the appellant. Substantially, that was the nature of the transaction. As we said, in effect, in the recent case of *Barrett* v. *Lewis,* 106 Ind. 120, the lien which arises in favor of the person to whom purchase-money is due is peculiarly of equitable cognizance. Equity has regard in such cases, as in others, for the substance, and not for the mere form. If, upon looking through the transaction, it appears that the debt which the party owes is in fact part of the purchase price of land, acquired in the transaction out of which the debt arose, a lien will be declared upon the land in favor of the person to whom such debt is due. The substance of the arrangement between the parties here concerned was, as the admitted facts made it appear, that Mrs. Gregory and her husband owed the appellant a debt which amounted to five hundred dollars. This debt was secured by a mortgage, which created a valid encumbrance upon her property in Michigan. She sold the Michigan property and desired to purchase property in Indiana; but to enable her to make the purchase, it became necessary that she should realize the full amount of the price at which she sold the property in Michigan. It was, therefore, agreed that the

appellant should release his mortgage on the property sold, so as to enable the appellee to receive the whole of the purchase-money, which was to be applied in payment of the property purchased, so that, instead of owing her vendor part of the purchase price, she would owe the appellant the amount which he had in effect paid, or transferred to her to be paid, on the LaPorte county land.

In the case of *Austin* v. *Underwood*, 37 Ill. 438, it was held that where a party purchases land and procures the purchase-money to be paid by a third person as a loan to the purchaser, the money thus loaned will be regarded as purchase-money as against the person for whom it was paid. *Magee* v. *Magee*, 51 Ill. 500; *Carey* v. *Boyle*, 53 Wis. 574; *Jones* v. *Parker*, 51 Wis. 218; *Carey* v. *Boyle*, 56 Wis. 145. The lien in such a case results from the transaction between the parties, and is manifested by all the circumstances attending each particular case.

The controlling question in cases of this character is, whether or not the debt owing is, as to the debtor, the balance due for purchase-money. *Barrett* v. *Lewis, supra; Boyd.* v. *Jackson*, 82 Ind. 525; *Nichols* v. *Glover*, 41 Ind. 24.

In the case of *Dwenger* v. *Branigan*, 95 Ind. 221, the facts were, that one party furnished the other fifteen hundred dollars in money for the purpose of paying the purchase price of certain real property, it being agreed at the time that the party furnishing the money should have a lien on the land purchased. A vendor's lien was declared in favor of the person furnishing the money. The principle which ruled that case fully sustains our conclusion here. The appellant having, at the appellee's request, in effect paid five hundred dollars of the purchase-money for her under an agreement that he was to hold a lien upon the land purchased, although the particular lien contemplated has miscarried, he will be subrogated by a court of equity to the rights of the vendor who received his money.

Equitable subrogation is the creature of courts of equity,

and obtains regardless of any contractual relations between the parties to be affected by it. Courts of equity administer its principles whenever it is necessary to secure substantial justice, without regard to form. This is the appellant's equity. Before the appellee can have the relief which she demands, she must recognize the corresponding equity of the appellant. "It is always incumbent upon the party asking the interposition of a court of equity in his behalf, to show a perfect equity." *Piatt* v. *Smith*, 12 Ohio St. 561; *Hill* v. *Nisbet*, 100 Ind. 341. Of course, upon the answer as it is pleaded, the appellant can have no affirmative relief. Such relief can only be obtained by setting up the facts by way of cross-complaint. But a defendant is not compelled to become an actor and ask affirmative relief. He may rely upon the facts as an equitable defence to defeat his adversary's claim. *East* v. *Peden*, 108 Ind. 92.

Our conclusion is, that the facts pleaded were sufficient to defeat the appellee's right to any relief.

Judgment reversed, with costs, with directions to the court below to carry the demurrer to the answer back and sustain it to the complaint, with leave to both parties to reform their pleadings.

Filed Sept. 20, 1887.