## McNinch, to use, v. A. W. Straub Company.

*Conflict of laws—New Jersey mortgages—Bond and mortgage delivered in Pennsylvania—Statutory requirement that proceedings on bond be postponed to foreclosure of mortgage.*
Defendant executed and delivered to plaintiff a bond and warrant of attorney in the penal sum of $19,000, accompanied by a mortgage upon real estate of defendant in Gloucester County, N. J. The bond referred to the mortgage and stipulated for the payment of taxes on the mortgaged premises, the production of receipts evidencing such payment, etc. The warrant of attorney was addressed to any attorney of any court of law "in New Jersey or elsewhere," the bond evidently being in the form intended to accompany New Jersey mortgages. The New Jersey statute postpones proceedings on the bond until the mortgage has been foreclosed and permits only a deficiency judgment. The mortgagee entered judgment on the bond in Philadelphia under the warrant. On rule to open: *Held,* that, 'assuming that the bond and mortgage had been delivered in Pennsylvania, nevertheless, the New Jersey statute controlled and the judgment should be opened.

Rule to show cause why judgment should not be opened and the defendant let into a defence. C. P. No. 2, Phila. Co., June T., 1924, No. 1865.

*Michael A. Maloney,* for plaintiff; *J. Verner Harold,* for defendant.

STERN, P. J., Dec. 29, 1924.—This is a rule to show cause why judgment should not be opened and the defendant let into a defence. From the defendant's petition it appears that on Nov. 1, 1921, the defendant executed and delivered to the plaintiff a bond and warrant of attorney in the penal sum of $19,000, and accompanied by a mortgage upon real estate of the defendant, situate in Gloucester County, State of New Jersey. The petition further sets forth that by an Act of the Legislature of the State of New Jersey, passed March 23, 1881, ch. CXLVII, P. L. 184, it is provided: "That in all cases where a bond

McNinch, to use, *v.* A. W. Straub Company.

and mortgage has or may hereafter be given for the same debt, all proceedings to collect the said debt shall be, first, to foreclose the mortgage, and if at the sale of the mortgaged premises under said foreclosure proceedings the said premises shall not sell for a sum sufficient to satisfy said debt, interest and costs, then and in such case it shall be lawful to proceed on the bond for the deficiency." It is further alleged that, disregarding this Act of the New Jersey Legislature, the plaintiff entered the bond accompanying the mortgage in Philadelphia County, confessed judgment thereon, and issued a *fi. fa.* without first selling the premises covered by the mortgage in New Jersey.

There is no specific allegation as to the place where the bond and mortgage were in fact executed and delivered. An inspection of the bond, a copy of which is attached to the petition, discloses that the obligor is a corporation chartered under the laws of the State of Pennsylvania and that the obligee is a resident of the City of Philadelphia. In the absence of any averment to the contrary, it may perhaps be presumed that the bond and mortgage were delivered in this State. It was so stated at the oral argument.

On this assumption the question arises as to whether the present application is to be determined in accordance with the laws of the State of Pennsylvania or of the laws of New Jersey. If the former, there was no impropriety in entering judgment upon the bond and seeking to effect collection thereunder, whereas, if the law of New Jersey prevails, the proceedings on the bond were premature and must await foreclosure of the mortgage in New Jersey, sale of the premises and a deficiency resulting therefrom.

Research discloses four cases in Pennsylvania which throw light upon the question, although none of them is believed to be determinative of the present issue.

The defendant relies upon the decision rendered in Sea Grove Building and Loan Ass'n *v.* Stockton, 148 Pa. 146 (1892). In that case the facts were the same as in the present one, except in the important respect that there the bond and mortgage were executed in the State of New Jersey. The real question in that case was whether the New Jersey statute above referred to was merely an act of limitation, or became an incident of the contract affecting the substantive rights of the parties. If it was an act of limitation, the *lex fori* would govern; if it was a substantive part of the contract, the *lex loci contractus* would govern. The court held that the act was not merely a statute of limitation affecting the remedy, but was an integral part of the contract affecting the rights of the parties thereto, and that, therefore, the case was not to be ruled by the law of Pennsylvania merely because that state was the forum in which the action was litigated, but by the law of New Jersey, where the contract was made.

It will thus be seen that when this authority is analyzed, it does not amount to a decision as to whether the *lex loci contractus* or the *lex rei sitæ* governed the contract, but rather grouped those two possibilities on the one hand and the *lex fori* on the other. The court decided merely that the New Jersey act was not one affecting only the method of procedure.

In Baum *v.* Birchall, 150 Pa. 164 (1892), a married woman and her husband executed a bond and mortgage, the latter covering real estate situate in the State of Delaware. The papers were signed in Pennsylvania, but were taken by the husband obligor to Delaware and there delivered to the obligee. The proceedings were in Pennsylvania upon the bond, and the married woman obligor tried to have the judgment opened on the ground that the fact of her having signed the bond in this State made it a Pennsylvania contract, and that because of her disability it could not be enforced against her, except as

to the land of which it was part of the purchase money. The court treated the bond and mortgage as being governed by the *lex rei sitæ*, and held, therefore, that the law of Delaware applied, and since, under the laws of that state, the bond was valid as to the married woman, that the judgment should not be opened. The decision on that point, however, may be regarded as *dictum*, in view of the fact that, as the court pointed out, the delivery of the bond, which is an essential part of the execution of the instrument, was effected in Delaware, and, therefore, the *lex loci contractus* and the *lex rei sitæ* were the same. It may be remarked, parenthetically, that other jurisdictions differ on the question as to whether the disability of a party to a bond and mortgage is to be determined by the place of execution of the bond or by the place where the mortgaged premises are situate. See, on the one hand, Evans *v.* Beaver, 50 Ohio State, 190 (1893), and, on the other, Swank *v.* Hufnagle, 111 Ind. 453 (1887), and Otis *v.* Gregory, 111 Ind. 504 (1887).

In Newman *v.* Brigantine Beach R. R. Co., 3 Dist. R. 833 (1894), argued by eminent counsel, the coupons of certain railroad bonds were made payable in the City of New York; the mortgage securing the bond issue was on premises situate in New Jersey; the mortgage and the bonds were made and executed in the State of New Jersey. The same question was raised as in the present case, namely, whether recovery could be had on the coupons before proceeding on the mortgage in New Jersey, as required by the Act of March 23, 1881, of the State of New Jersey. Judge Biddle expressed it as being his opinion that New York was selected by the parties simply as a convenient place for the payment of the money, that the parties had in contemplation the law of the State of New Jersey, where the contract was made and the property of the defendant company was situated, and that, therefore, the law of that state governed, and, accordingly, that recovery could not be had on the coupons without first foreclosing the mortgage. It will be noted that in that case the bonds were executed in the State of New Jersey, and, therefore, the place of contract and the place where the mortgaged premises were situate were the same. It is true, however, that the place of performance of the payment of the coupons was the State of New York, as above pointed out.

In Van Horn *v.* McInnes Brick Manuf. Co., 5 Dist. R. 701 (1896), also argued by eminent counsel, the proceedings were to recover certain moneys loaned to the defendant, which, about a year after the loans were made, were secured by the execution of a bond and mortgage. The papers were executed in Philadelphia, but the mortgage was on property situate in New Jersey. This case also involved the question of the New Jersey Statute of March 23, 1881. Judge Arnold held that the plaintiff could recover, notwithstanding the decision in Sea Grove Building and Loan Ass'n *v.* Stockton, 148 Pa. 146. The court placed its decision, however, upon the ground that the action was not upon the bond, but upon the original obligation incurred in the making of the loans, and the bond and mortgage having been executed later, merely as a security for the previous indebtedness, they did not affect the proceedings then before the court.

It will thus be seen that, while it may fairly be said that the Pennsylvania decisions point in the direction of holding that the New Jersey statute prevails in such a case as the present one, nevertheless, the facts in each are distinguishable on some ground or other, and, therefore, technically, the present case on its exact facts seems, as far as the court is informed, to be one of first impression.

The difficulty in the case arises from this circumstance, namely, that if we had under consideration merely a bond, the proceedings would usually be

McNinch, to use, *v.* A. W. Straub Company.

determined by the law of the place where the bond was executed or where performance thereunder was to be had, whereas, if we were considering merely a mortgage as a separate instrument, the law is well settled that such mortgage is to be governed in its construction and operation by the law of the place where the premises which it liens are situated. In the present case, under these general rules, the bond would be governed by the law of Pennsylvania, the mortgage by the law of New Jersey, but the complication in the problem arises from the fact that the two instruments constitute more or less a single transaction, and, therefore, it becomes difficult to say which law should prevail.

The fact is often lost sight of that, while the provision that contracts affecting real estate should be determined by the law of the place where the land is situated is a fixed and absolute one, the other rule, namely, that a personal contract is to be governed by the law of the place where the contract is made or, if to be performed in another jurisdiction, by the law of the place of performance, is merely a presumption as to the intention of the parties, and it is the intention of the parties that is the ultimate fact to be determined. The real place of the contract is a matter of mutual intention, except in those specific cases where the parties stipulate a particular jurisdiction in order, by evasion, to commit what amounts to a fraud upon the law. The intention of the parties may be either expressed or implied from the circumstances, and it is merely because, in the absence of anything to the contrary, that their act in entering into the contract at a particular place would seem to indicate an intention on their part to contract with reference to the laws of that place that the *lex loci contractus* is ordinarily held to govern.

Looking at the matter from this basic point of view, the question is really, therefore, whether, in executing a bond and mortgage, the parties intend that the bond should be governed by the law of the place where it is executed or by the law of the state in which the mortgaged premises are situate, by which latter law, under fixed principles, the mortgage itself must be governed. The determination of this question must necessarily depend upon the facts of each particular case. It may be conceived, for example, that a corporation might execute a bond issue in a large sum, secured by mortgages on properties in various states; these mortgages must each be determined by the laws of the state where the liened premises are situate, but the intention of the parties may well be held to be that, as far as the bonds are concerned, they should be governed by the place where they are issued. In other words, in such a case the bond issue may be considered the predominant part of the transaction and the various mortgages merely as collateral and subsidiary thereto. On the other hand, in an ordinary single mortgage transaction, the dominant thought in the minds of the parties may be the mortgaging of the premises, and the accompanying bond may be executed merely as incidental thereto and as a part of the usual form and machinery of such transaction. In such a case, the intention of the parties presumably would be that the law of the bond should follow the law of the mortgage, which necessarily is the law of the place where the premises are located.

In the present case the court is of the opinion that the facts fairly indicate that the mortgage on the New Jersey land was the purpose uppermost in the minds of the parties, and that the giving of the bond was subsidiary to that main purpose. This conclusion is reached more especially because of the reference to the mortgage in the bond. The bond stipulates for the payment of the taxes on the mortgaged premises and the production of receipts evi-

McNinch, to use, v. A. W. Straub Company.

dencing such payments, as well as for the payment of all other taxes, municipal assessments and charges on the land. Incidentally, it may be pointed out that the warrant of attorney accompanying the bond is addressed, "To any attorney of any court of law in New Jersey or elsewhere," and the bond is evidently of the form intended to accompany New Jersey mortgages.

We have, therefore, a case where certainly the mortgage must be held to be governed by the law of New Jersey, and where, so far from there being any indication of an intention of the parties to differentiate the law governing the bond from that governing the mortgage, there would seem rather to exist an intent to intertwine the two instruments in such manner, so to speak, as to assimilate them and have them regarded as a single transaction, and, therefore, to have the same law govern the personal contractual features of the obligation as necessarily governs the realty features thereof. This conclusion is the more justified because it would seem to be in harmony with what, as hereinbefore pointed out, we believe to be the drift of the Pennsylvania decisions.

The question as to whether the entry of judgment by confession under the warrant of attorney accompanying the bond is in itself a "proceeding" on the bond within the meaning of the New Jersey statute is answered by the decision in Sea Grove Building and Loan Ass'n v. Stockton, 148 Pa. 146, where the court opened the confessed judgment and did not merely restrain collection proceedings thereunder.

For the reasons thus indicated, the defendant's rule is made absolute.