JOSEPH J. PRINTUP, plaintiff in error, *vs.* DAVID B. BARRETT, administrator, defendant in error.

When A loaned money to B, to be used by B in rebuilding a certain mill of B's, which had been destroyed and was being rebuilt, and it was understood that A was to have a lien on the mill to secure him, but no writing or other written memorandum was made, except the giving of notes for the money, and there was no charge of accident, fraud or mistake by which the execution of such a writing was prevented:

*Held,* That after B's death, on a bill to marshal his assets, equity will not set up in favor of A a lien on the mill, to the prejudice of the other creditors of B.

Equity. Bill to marshal assets. Lien. Parol evidence. Before Judge PARROTT. Gordon Superior Court. February Term, 1872.

David B. Barrett, as the administrator upon the estate of A. P. Bailey, deceased, filed his bill against Joseph J. Printup and others, creditors of said estate, for the purpose of marshaling the assets. Printup, in his answer, set up that the complainant's intestate was indebted to him in the sum of $2,893, besides interest on certain promissory notes for the securing the payment of which he claimed a lien on the Oothcaloga Mills, by virtue of an understanding with said intestate, that if defendant would let him have the money to rebuild said mills, said mills and mill seat should stand good for the sum advanced, and that defendant should have a lien on said property for the same.

C. D. McCutchen, Esq., was appointed Master in Chancery, and the claim of said Printup referred to him. He made the following report:

"J. J. Printup's four notes are allowed as follows:

"Note for principal sum of $1,632, with interest from 1st of May, 1866.

"Note payable in gold for $200, with interest from 1st of May, 1866.

"Note for principal sum of $261, with interest from 7th June, 1866.

"Note for principal sum of $800, with interest from 18th December, 1865.

"The said gold note of $200 may be discharged in currency by adding ten per cent. to the principal and interest for the premium on gold.

"I find that these notes of J. J. Printup were given by A. P. Bailey for cash borrowed to be used in and about the construction of the mills known as the Oothcaloga Mills, and that the money was so used, but the testimony did not satisfy me that there was ever any definite or distinct understand-

ing between Bailey and Printup, that Bailey was to give any mortgage or lien to Printup on the mills to secure the payment of the notes; no such lien was in fact ever executed, and the lien claimed by him on said mill property is not allowed, and his claims are to grade only as promissory notes."

Printup excepted to said report. A jury was impanneled to try the issue thus formed.

Defendant introduced the notes above set forth, and offered to prove by E. D. Hudgins that said A. P. Bailey came to witness' house in the latter part of the spring or first of the summer of 1866, and said that he had gone as far as he could in rebuilding his mills on Oothcaloga creek, which had been burnt during the war, unless he could find a man who would let him have some money; that he had been riding about to find some one, but had failed; asked witness if he knew of any one from whom he could get $2,000 or $3,000; said that if he could find any one who was willing to let him have the money, he would give a lien on the mills and mill property to secure the debt; witness told him that he thought plaintiff had some money, and probably he might get it from him; Bailey said he would go to see him, and if defendant would let him have the money he would give him a lien on his mill, and mill property to secure him, and if necessary, give him a mortgage thereon; that Bailey went off in the direction of Printup's, and in the evening of the same day came back from towards defendant's, and told witness that he got about $2,000 from defendant, but had very hard work to get it and could only obtain it by agreeing to let defendant have a lien on said mills and mill property, and that defendant would not let him have the money without an understanding and agreement that he was to have said lien to secure the same; that he felt thankful to defendant for letting him have the money on these terms, as it would enable him to go on rebuilding his mills.

This evidence was objected to upon the ground that a lien on real estate could not be created and proven by parol contract

and agreement. The objection was sustained, the evidence excluded and defendant excepted.

The defendant offered to prove substantially the same admissions made by Bailey by the witnesses, J. M. Jones, M. M. Anderson, J. F. C. Martin, James Staggs, William Chamolin, Jesse Monon, and ......... Vanhorn. Upon objection made the evidence was excluded and defendant excepted.

The defendant having no further evidence the Court passed an order confirming and allowing said report of the Master in Chancery, making the same a part of the decree, and defendant excepted.

The defendant excepts and assigns error upon each of the grounds aforesaid.

W. H. DABNEY, for plaintiff in error.

DAWSON A. WALKER, by brief, for defendant. Lien on land is an interest in or concerning it and must be in writing : Code, sec. 1940. This is not an implied trust : Code, sec. 2290. Nor is it an express trust : Code, sec. 2284. Even if fraud were charged it is doubtful whether it would sustain the claim made here : 6th Ga. R., 599. If a party omits to take a writing he must submit to the consequences : 2d Story's Eq., 768; 1st Vernon, 151; 1st Bro. Ch. R., 565; Hil. on Mor., 453; Coote on Mor., 222.

McCAY, Judge.

We have examined the cases referred to as sustaining the claim set up by the plaintiff in error. But none of them go as far as is necessary even to furnish a principle on which this claim can be based. In the case of King's Heirs *vs.* Thompson, 9th Peters, 204, the person claiming the lien was in possession, claiming the property in good faith as his own, and had expended money to improve it. And so of all the cases of a claim of lien on this ground. There are some English cases where a lien has been allowed in equity when

Printup *vs.* Barrett.

the person claiming it can be said to stand within the reason of the rule giving a vendor of real estate a lien where he has taken no security. But as our Code has abolished this vendor's lien, it seems to follow that, although liens which only can be sustained because they come within the equity of the vendor's lien ought to fall with it. If the greater—the exemplar—does not exist, can it be said that the other does? We do not, therefore, see how this lien can be sustained on general principles of equity.

Had the defendant, in his answer setting up this lien, stated or alleged that it was agreed there should be a written mortgage—that his money was advanced with this agreement, and that, by some fraud of Bailey or by some accident, the written mortgage was prevented from being executed, there would be some ground to stand on. Fraud or accident opens the door for a reply to the statute of frauds. But see *Price vs. Cutts*, 29*th Georgia*, 147. But here is no such proof nor any such obligation. It is true, one of the witnesses states that Bailey told him he was to give a mortgage; but Mr. Printup, who is presumed to have stated his case as strongly in his answer as he could, says nothing of any agreement that there should be a *writing*. And even if this were stated the element of fraud or accident would still be wanting. The agreement may have been had, that the written mortgage was to be given, and the failure to have it done been mere neglect of both parties. The statute is imperative, that mortgages and express trusts must be in writing: Irwin's Revised Code, sections 1945–2284. Equity will only interfere when the setting up of the statute would be to protect a *fraud* or prevent relief against an *accident*. Neglect—inattention to one's own business—mere failure to see to it that an agreement is made and *signed*, as stipulated, is not such an accident as equity will relieve against. It does not come to the aid of the sleeper, but of him who, though awake, has been entrapped by fraud or been prevented from getting his agreement put into writing by inevitable accident.

Judgment affirmed.