Dwenger, Bishop, v. Branigan.

No. 10,821.

## DWENGER, BISHOP, v. BRANIGAN.

REAL ESTATE.—*Equitable Vendor.—Lien.—Volunteer.*—Where B. furnished the money and paid for certain real estate for the use of a church as a parsonage and dwelling for the priest of such church, under an agreement that he was to have and hold such real estate and a specific lien thereon, and the equitable title thereto, until the money so furnished was repaid to him; and where, under such agreement, by the procurement of B. and in conformity with the polity of the church, the deed of the real estate was made direct to D., a bishop of such church, who was a mere volunteer and paid nothing for such real estate,

*Held,* that practically, as between B. and D., the former was the equitable vendor, and the latter was the vendee, of such real estate.

*Held,* also, that for the amount of money so furnished and paid by B. in the purchase of the real estate, and remaining unpaid, he had the equitable lien of a vendor, and could enforce the same against the real estate in the hands of D.

From the Tippecanoe Circuit Court.

*T. B. Ward* and *W. P. Breen,* for appellant.

*R. P. Davidson* and *J. C. Davidson,* for appellee.

HOWK, C. J.—This suit was commenced by the appellee against the appellant, in the Boone Circuit Court. Afterwards, upon appellee's request, the venue was changed to the court below. There the cause was put at issue and tried by a jury, and a general verdict was returned for the appellee, assessing his damages at $1,240, " and that the same is a lien on the lot described in the complaint." With their general verdict the jury also returned into court their special findings on particular questions of fact submitted to them by the court, with the consent of the parties. Over the appellant's motion for judgment in his favor on the special findings of fact, notwithstanding the general verdict, and his motion for a new trial, the court rendered judgment against him for the appellee upon and in accordance with the general verdict.

The first three errors assigned by the appellant in this court are the overruling of his demurrers to each of the second,

third and fourth paragraphs of appellee's complaint, for the alleged insufficiency of the facts therein to constitute a cause of action. Appellee's complaint contained four paragraphs; but, with leave of the court, the first paragraph was withdrawn before the trial of the cause.

In the second paragraph of his complaint the appellee alleged that, on the 4th day of January, 1880, at the special instance and request of the appellant, the appellee furnished appellant the sum of $1,500, for the purpose of being invested by him in the real estate in Boone county, Indiana, described as lot No. 3, in block No. 13, in the town of Lebanon; that at the time the appellant so received such sum of $1,500, it was mutually agreed between him and the appellee that the same should be a special lien in appellee's favor on said real estate; that, because of such agreement and for no other or different reason, the appellee furnished the appellant the said sum of money, under said agreement, and invested the same in such real estate, and thereupon a deed thereof was made to the appellant; that the appellant still held such real estate, subject to such claim and lien of the appellee; that the appellant had failed to repay to the appellee the said sum of $1,500, or any part thereof, but the same was due and remained unpaid; that at the time the appellee furnished and paid the said sum of money as aforesaid, and at the time of purchase of such real estate and of the execution of said deed, it was agreed by and between appellee and the appellant that the appellee should have, hold and retain the equitable title in and to said real estate, and have and hold his special lien on the same for the said sum of money, until the same should be repaid to him. Wherefore the appellee demanded judgment for the sum of $1,500, and that the same be adjudged and decreed a lien on such real estate, and that the same be sold, etc.

In the third paragraph of complaint appellee averred that, on January 4th, 1881, it was mutually agreed by and between him and the appellant, one Timothy Ryan acting as agent for

and on behalf of appellant, that appellee should furnish the appellant, through his agent, Ryan, the sum of $1,500, for the purpose of purchasing the same real estate described in the second paragraph, which real estate and the dwelling-house thereon were to be so purchased for the use of the congregation of the church of St. Charles Borromeo, of the Catholic Church of Lebanon, as a parsonage and dwelling for the priest of such church; that it was further mutually agreed by and between appellee and appellant, said Ryan acting as appellant's agent in said agreement, that for and in consideration of appellee's procuring for appellant, and letting him have the said sum of money, and for no other or different consideration, the appellant, by his agent, Ryan, would purchase said real estate for the purpose aforesaid, and appellant should take the deed of such real estate in his own name; that it was also agreed by and between appellee and appellant, and his agent, Ryan, at the time of the payment by appellee of said sum as purchase-money of said real estate, and at the time of the execution of said deed to appellant, that the appellee should have and hold an equitable title in and to such real estate, and a special lien thereon, until such sum of money was repaid to him, and the appellant was to hold such real estate in trust, and for the use of appellee, until he should be repaid said sum of money. This paragraph then stated the appellee's performance of his part of the several mutual agreements recited, and the failure of the appellant, and of his agent, Ryan, to comply with such agreements, substantially as the same facts were stated in the second paragraph of complaint.

In the fourth paragraph of his complaint the appellee states the same cause of action, and demands the same relief as in the previous paragraphs, but in somewhat different language. We take the following summary of the fourth paragraph from the brief of appellant's counsel:

" The fourth paragraph alleges that Ryan was priest, and appellant bishop, etc., as in third paragraph; that Ryan wished to purchase the lot described for a parsonage, and made said

purchase, the deed being taken to appellant; that Ryan, not having the necessary means, applied to the appellee for help; that appellee, as agreed with Ryan, was to furnish the money, 'in whole or in large part,' to Ryan to pay for the lot, the deed to be made to the appellant; but the appellee was ' to stand in relation of vendor,' and to have a vendor's lien on the lot; that Ryan bought the lot for $1,500, but took it subject to a mortgage of $250, which was to be deducted from the purchase-money; that, in order to raise the money, the appellee procured a loan of $1,500 from the bank, and gave the money to Ryan to pay the vendor of the lot; that Ryan afterwards paid $600 on the note given for $1,500, of which sum $40 was applied to the interest, and the appellee afterwards paid to the bank $1,020, being the balance of the note; that having full confidence in Ryan, ' he neither took nor asked any evidence in writing of his said agreement;' that appellant took the title subject to appellee's equitable lien, paid nothing for it, holds it as church property, and, on demand, refuses to recognize appellee's claim; that Ryan is a non-resident and insolvent. Prayer for a decree giving appellee a lien on the lot, etc."

No specific objection is pointed out, in argument, to either one of these paragraphs of complaint, by the appellant's learned counsel; but each and all of the paragraphs are assailed, upon the broad ground that they each fail to show any such claim to or lien upon the real estate, in appellee's favor, as a court of equity can or ought to enforce. We are of opinion, however, that the facts stated in each of said paragraphs of complaint were sufficient to withstand the appellant's demurrer thereto. It is first claimed by the appellant's counsel, that, " If any cause of action is shown in favor of the appellee, it is exclusively founded on the note of Ryan and appellee to the bank, which note was paid by the appellee." Counsel then say : " There is no copy of this note in the complaint, or elsewhere in the record. If the proposition, that the note was the only basis of the plaintiff's right of action, be correct,

then the complaint in each of its paragraphs is clearly defective, and the demurrers should have been sustained; because neither the note nor a copy thereof is set out." The difficulty with this argument of counsel is that the "proposition" on which the agreement is founded is wholly incorrect. It is a mistake to say, that the appellee's cause of action, as stated in either paragraph of his complaint, is in any respect "founded on the note of Ryan and the appellee to the bank, which note was paid by the appellee." Such a note is not mentioned, or even alluded to, in either paragraph of appellee's complaint, and it can not be said with any degree of legal accuracy, that such note, if it exist, is the foundation of appellee's complaint. Under the code, it is only when a pleading is founded on a written instrument, that "the original, or a copy thereof, must be filed with the pleading." Section 362, R. S. 1881; *Sinker, Davis & Co.* v. *Fletcher,* 61 Ind. 276.

It is next insisted by the appellant's counsel, "that the whole record shows that the appellee has no right, such as is given him by the decree." That is, as we suppose, that upon the facts stated in the complaint, and shown by the evidence, the appellee had no claim to or lien upon the real estate in controversy, such as can be enforced by the decree of a court of equity. It is claimed that there is no charge of fraud against the appellant in either paragraph of the complaint. Certainly, that is true; for each paragraph was manifestly prepared on an entirely different theory, and it was not necessary to charge the appellant with fraud. Appellant's counsel also insist, "that a vendor's lien must result from implication of law, and can never be the outgrowth of promise or agreement." Upon this point, counsel cite *Boyd* v. *Jackson,* 82 Ind. 525, wherein it is said: "While a vendor's lien results, by implication of law, from certain transactions between parties, and not from any agreement between them, and is presumed to exist in all cases in which such a lien is allowed by law, yet whether the lien which the law has conferred

has been in fact continued in existence, is a matter of intention, as manifested by all the circumstances attending each particular case."

It can hardly be said, that the case cited supports the position of appellant's counsel, if we understand them correctly; for a vendor's lien does not result *from* an implication of law, but from certain transactions between parties *by* implication of law. Where a vendor's lien does result from the transactions of parties, by implication of law, it can not be said that such lien would be impaired, invalidated or destroyed, by reason of any "promise or agreement" of the parties, for the creation or continued existence of such lien. For, in the case last cited, it was held that the declarations of the parties, in regard to a vendor's lien, were "relevant to the question of the intention of the parties respectively, and hence not erroneously admitted by the court."

Upon the facts of this case, as stated in the complaint and shown by the evidence, we are of the opinion that the appellee had and held such a claim to and lien upon the real estate described in his complaint as a court of equity might and ought to enforce in his favor against the appellant. The money was furnished, for the purchase of the real estate, by the appellee. He was to have and hold the property and a specific lien thereon, and he was to have the equitable title thereto until the money furnished was repaid to him; and under this agreement, by his procurement and in conformity with the polity of his church, the deed of the real estate was made direct to the appellant. Practically, as between the appellee and the appellant, the former was the vendor and the latter the vendee of the real estate. In *Johns* v. *Sewell*, 33 Ind. 1, one of the questions in the case was this: Whether the equitable lien for purchase-money exists when the actual vendor held only a title in equity, and the conveyance was made direct, as in this case, from the party holding the legal title in trust? In considering this question the court said: "Where a purchaser has paid the whole purchase-money, he is, in equity,

regarded as the real owner of the land for every purpose. He is so in very substance, and a conveyance to him is but a compliance with a form of law. It would be a surprising doctrine, that a court of equity would so stick upon form, in utter disregard of right, as to deny to him the implied lien for purchasemoney, which it would give if he had held also the legal title. No such distinction is hinted at in the text-books, and we are unable to conceive of a plausible argument to sustain it."

The case last cited was approved and followed, upon the point under consideration, in *Fleece* v. *O'Rear*, 83 Ind. 200, where it was said: "The fact that the appellant was only the equitable owner of the land, did not deprive him of the right to enforce a vendor's lien for the purchase-money."

In *Carey* v. *Boyle*, 53 Wis. 574, it was held by the Supreme Court of Wisconsin that where A. purchased land for the benefit of B., and paid the purchase-money, and had the deed made to B., in the view of equity A. and B. stood in the relation of vendor and purchaser of the land, and the former had a vendor's lien for the amount of the unpaid notes; and further, that even if A. was to be regarded as a stranger to the title, who merely advanced money to B. for the sole purpose (as understood by both) of enabling the latter to purchase the land, he, A., was entitled to be subrogated to the rights of the vendor. See, also, *Jones* v. *Parker*, 51 Wis. 218; *Carey* v. *Boyle*, 56 Wis. 145.

Before closing this opinion we may properly remark that, although this cause was apparently submitted to a jury for trial as an ordinary civil action, yet the record shows that afterwards, by the agreement of the parties, the cause was submitted to the court, as a suit in equity, upon the complaint, answer and evidence heard, and upon the general verdict and special findings of the jury. for final hearing, judgment and decree. We find no error in the record. The judgment is affirmed with costs.

ZOLLARS, J., was absent when this cause was considered and decided.

Filed April 26, 1884.