## DANIEL S. WILLIAMS v. JULIA G. RICE.

*Vendors lien—Foreclosure of same as a mortgage.*

On an examination of the record, in this case, the court regard the failure of the defendant to execute the promised mortgage to complainant, as unconscionable, complainants statement in regard to the transaction between the parties, being fully sustained by the facts and circumstances disclosed in the proofs.

Appeal from Kent. (Montgomery, J.) Argued January 19, 1886. Decided February 17, 1886.

Complainant filed a bill to establish a vendor's lien and foreclose the same as a mortgage. Defendant appeals. Affirmed. The facts are stated in the opinion.

*Godwin & Earle*, for complainant:

How. Stat. § 5569, does not apply to this case. Counsel cite the following authorities in support of this proposition: *Fisher v. Fobes*, 22 Mich. 454; *Linsley v. Sinclair*, 24 Mich. 380, 381; *Ransom v. Ransom*, 31 Mich. 301; *Merrill v. Allen*, 38 Mich. 487; *Hiscock v. Norton*, 42 Mich. 320–4–5; *Byrne v. Rood*, 54 Mich. 67; 4 Kent's Com. p. 152; Story Eq. § 1217, 1218, 1219, 1255, 1260; *Boyd v. McLean*, 1 Johns. Ch. 582.

*John C. Quinsey and William E. Grove*, for defendant:.

The agreement set forth in the bill, does not "contain such elements of certainty that the court can give effect, by its decree, to the real understanding of the parties," and the bill should have been dismissed with costs. *McClintock v. Laing*, 22 Mich. 212.

(Balance of brief confined to a discussion of the testimony. No other authorities cited. Reporter.)

SHERWOOD, J.   The bill of complaint in this cause is filed to establish a lien upon a house and lot in the city of Grand Rapids, and foreclose the same as a mortgage, said lien being for the purchase money of the property.

The circumstances out of which the transaction arose, were substantially as follows:

The complainant is an old man about 68 years of age, and feeble.   The defendant is a divorced lady about 35 years of age.

Previous to 1882, the complainant had lived alone for about 18 years, was poor, and earned his living mainly by his own labor.   The record shows him to be a man of good intelligence, and of a very kind and benevolent disposition, and confiding in his nature.   The parties became acquainted with each other eight or nine years before the hearing, at the house of an uncle of defendant's, in Jennisonville, Ottawa County, where complainant was boarding at the time.   He had no family except a daughter, who was married and resided in Cleveland, his wife having obtained a divorce from him about 14 years before.   The defendant

had also been unfortunate in her marriage, had separated from her husband, and was then living in the family of her uncle, with whom she had formerly made her home. The parties were much together there, and became interested in each other. "A social, friendly relation sprang up between them," and they greatly sympathized with each other in their troubles and loneliness; and they finally arranged that they would, in the future, keep house together, and that he should treat her as his daughter, and she him as a father, and that they would maintain themselves by keeping boarders; and from this time on they seemed satisfied with the arrangement, visited each other frequently, and frequently corresponded. He made presents and frequently gave her money, dividing with her his scanty earnings, as he thought she needed it; had his life insured for her benefit; and, feeling that he had secured in her a friend, and having made such arrangements as would provide for himself and her a home, and such care as would be needed to make him comfortable in his old age, he told her he would make her eventually his heir, would take care of her to the best of his ability, and should expect, and depend upon, her kindness and care in case of his sickness and his approaching helplessness; to all of which she, in the strongest language, gave him her consent and assurance.

In December, 1881, he received a legacy of $2000. He had told her that he expected it, and had promised her a watch and chain when it should come, which he subsequently gave her. He deposited $1900 of this money in bank. She knew he expected to get this money, and knew that he did get it. He consulted with her, and told her his plans about investing it. First told her that he would loan it on a mortgage on farm property; then came to the conclusion that, as his health was failing slowly, but surely, he would leave it in the bank at bank interest, but she said: "You can make more of it by putting it out." Then she proposed to him to buy some property in Grand Rapids. He looked at some pieces of property that he did not want, and then told her that he would rather the money would lie in the

bank; but he saw that she was very anxious about it, and finally told her, he says, like this:

" Look around, and if you think *we* can do better, or I can do better, by putting this money out, buying property,— well I will look it over and see what I think of it myself."

He then says:

" She looked around, and found this place, and wrote to me to come up and look at it. I came up and looked at it, and thought it was worth the money."

After looking at the property, he talked the matter over with defendant at the depot, and told her, "*perhaps we better buy it;*" and took out of his pocket a certificate of deposit for $1500, indorsed it over to her, and told her to draw the money on it, and pay for the property. She did not complete the trade at once. A discharge of a mortgage, which was held elsewhere, had first to be obtained, and the complainant again came to the Rapids, where the defendant was at this time employed in a millinery store, and she returned to him the certificate to draw the money for the purchase price of the property. He then had the deposit changed into two sums, and brought to her a certificate for $1100, and left it with her to pay for the property when the discharge of the mortgage should come.

When the arrangement was made to purchase the house and lot, the defendant suggested to the complainant, if it was his intention that she should have the property when he died, she would prefer that the deed should be made to her, and that she would give him a mortgage upon the property for $1100, which would be a security for his maintenance and support, and it was arranged between them that this should be done. After his return to Grandville, where he was then staying, the deed was received and the purchase completed. She at once rented the property for a year at $12 per month. It was occupied, however, only from August until March, when the parties moved into it themselves. Some considerable improvements were made upon the property before they moved into it, for which the complainant

paid over $100. He continued to live in the house with the defendant about eighteen months. As soon as she obtained the deed, the complainant endeavored to get her to execute to him the promised mortgage, but she constantly put it off upon one pretext and another, and finally neglected and refused to give him any lien upon the property whatever; but on the twenty-third day of June, 1883, without the knowledge or consent of the complainant, mortgaged the property to another for the sum of $300.

The complainant, failing in all his efforts to get the lien to which he was entitled, and the defendant refusing to recognize her obligation in the premises, on the fifth day of July, 1884, filed his bill of complaint in this cause.

The defendant answered, denying the agreement to give the mortgage, or that the complainant is entitled to any equitable relief against her.

A large amount of proofs were taken in the case, which was heard before Judge Montgomery, (the proofs having been taken in open court) who rendered a decree granting the relief prayed in the bill.

We have examined the record, and, without referring in detail to the evidence, must say that we regard the failure of defendant to comply with the request of complainant as unconscionable. We think the complainant's statement in regard to the transaction between the parties, fully sustained by the facts and circumstances disclosed in the proofs.

The decree made by the circuit judge is in all things right, and must be affirmed, with costs.

CAMPBELL, C. J. and CHAMPLIN, J. concurred; MORSE, J. not sitting: