No. 14,355.

## WOOD *v.* WOOD ET AL.

PRINCIPAL AND SURETY.—*Real Estate.*—*Purchase-Money.*—*Equitable Lien.* —*Parol Agreement.*—*Husband and Wife.*—D. W. agreed with J. W. that if the latter would become his surety in borrowing money with which to make the first payment on real estate for which he had bargained, he should have a lien thereon to secure him from loss as such surety. The real estate was purchased, the borrowed money expended in making the first payment, and with the knowledge and consent of the surety the conveyance was made to the wife of D. W. The principal failing to pay the note the surety finally executed his own note in satisfaction thereof. The remainder of the purchase-money was paid by the wife. The first payment by D. W. was on a debt he owed his wife. The wife, at the time of taking the conveyance, had knowledge of all the facts above stated, but did not know of the verbal agreement as to the lien. . *Held,* disregarding the verbal agreement, which is ineffectual to create a lien by contract, that the surety, whose position is that of a general creditor, has no equitable lien upon the real estate on account of his payment of the note.

From the Jasper Circuit Court.

*E. P. Hammond* and *W. B. Austin,* for appellant.

*S. P. Thompson,* for appellees.

BERKSHIRE, C. J.—The facts involved in this case, briefly stated, are as follows:

McCoy and Thompson were bankers at Rensselaer, Indiana, on the 5th day of February, 1883, and on that day the appellee Daniel Wood, and the appellant executed their note to said McCoy and Thompson for $111, due in one year, the said Daniel Wood being the principal in said note, and the appellant his surety.

When said note became due the said Daniel not being prepared to make payment thereof, it was taken up and a new note given by the said parties. Renewal notes were given from time to time until the 7th day of March, 1887, when the appellant executed his own note in payment and satisfaction of said indebtedness.

VOL. 124.—35

That on said 5th day of February, 1883, one Christian Gish was the owner of the following described real estate in Jasper county, Indiana, to wit : The southwest quarter of the northeast quarter section 18, township 28, range 6, and continued so to be until the 8th day of February, 1883, when he conveyed the same by warranty deed to the appellee, Martha T. Wood ; that the consideration to said Gish for the said real estate was $200 ; one hundred dollars paid in cash, and the promissory note of the said Martha and Daniel executed for the sum of $100, payable in one year from the date of said deed, secured by a mortgage executed by them upon said real estate. That the cash payment made to said Gish was the proceeds of said note first executed by the said Daniel and the appellant to said McCoy and Thompson, and was borrowed for that purpose ; that when the said note was executed and loan made, the said Daniel had bargained with said Gish for the said real estate, and so informed the appellant, and promised and agreed with him that if he would become his surety in borrowing said money said real estate should be bound to him, and he should have a lien thereon to secure him from loss as such surety ; that the appellant relied upon said agreement, and was induced thereby to become surety on said note. That the said conveyance was executed by said Gish to said Martha at the instance of the said Daniel, with the knowledge and consent of the appellant.

That after the said note which the said appellees had executed to said Gish became due, the same was paid by the said Martha, and she had no knowledge of said agreement as to said lien between the appellant and the said Daniel until long thereafter, and no knowledge of any intention on the appellant's part of asserting or claiming a lien upon said real estate ; but she did know at the time she received said conveyance that Daniel and the appellant had executed their notes to McCoy and Thompson to obtain the money to make the first payment on the land, and that the appellant was Daniel's surety on said note, and that the money thus ob-

tained had been used in making said first payment, and she knew then and thereafter that it had not been repaid.

The consideration which moved from Martha to Daniel was a credit of $100 upon an indebtedness in the sum of $235, which he had owed to her for nearly ten years. At the time the loan was made by McCoy and Thompson to Daniel he was insolvent, and has been so ever since.

During all of the foregoing transactions the appellees were husband and wife.

Upon the foregoing statement of facts the question which we are called on to determine is: Has the appellant an equitable lien upon the real estate described, on account of his said payment to McCoy and Thompson? We think he has not.

This court is more liberal than are the courts of most of our sister States in the recognition of equitable liens upon real estate, but we find no case decided by this court or elsewhere to support the theory of the appellant in this case.

In the case of *Dwenger* v. *Branigan,* 95 Ind. 221, the decision is placed expressly upon the ground that the relation of vendor and vendee existed between the parties.

In *Barrett* v. *Lewis,* 106 Ind. 120, the facts of the case as given in the opinion are as follows: "Hester A. Lewis conveyed a tract of land in Marion county to Gottfried Muhlman, and to secure a part of the purchase-price took a mortgage. Subsequently she obtained a decree of foreclosure, and upon a sale of the land made in pursuance of the decree, she became the purchaser, and received from the sheriff a certificate of purchase, in due form. Before the period of redemption expired, she sold and assigned the certificate and all her rights thereunder, to Lucy B. Barrett, who paid part of the consideration for the assignment in cash, and for the residue executed her promissory note, due in two years. It was stipulated in the note that it was given for ' purchase-money for real estate.' At the expiration of the year for redemption, which was about four months after taking the

assignment, Mrs. Barrett received a sheriff's deed upon the certificate, and went into possession of, and has ever since continued to own, the land."

Upon the foregoing statement of facts it was held that the assignor of the sheriff's certificate was entitled to enforce a vendor's lien as against the title held by her assignee, and acquired through such assignment.

Under the facts of that case the assignor, if not technically a vendor, was one in equity.

As between the parties the note represented the unpaid purchase-money for the real estate to which Mrs. Barrett had acquired title; the parties had so recognized it in their contract, and it would have been contrary to the rules of equity and in violation of good conscience not to have recognized and enforced the lien. See Jones Liens, section 1094; *Yarborough* v. *Wood*, 42 Texas, 91.

In the well considered case of *Otis* v. *Gregory*, 111 Ind. 504, the conclusion reached was that the facts disclosed a payment of part of the purchase-money by the appellant for the execution of the conveyance to the appellee, and hence he was entitled to enforce a vendor's lien. The facts in that case, as we find them stated in the opinion of the court, are as follows: "On the 15th day of October, 1873, the plaintiff and her husband became indebted to the defendant in the sum of $460. This indebtedness was secured by a mortgage executed by the plaintiff on her separate property in Michigan. Afterwards, in June, 1874, the plaintiff sold her Michigan property and purchased that in question in La Porte county. To enable her to make the purchase, it became necessary that she should be able to use the entire purchase-money arising from the sale of the Michigan property, including the amount due the defendant on his mortgage debt. The defendant agreed that he would release his mortgage on the property in Michigan, and permit the plaintiff to use the amount due him in paying the purchase-money of the La Porte county property, she agreeing to give him a mortgage

on the latter when the transaction should be completed. The defendant released his mortgage accordingly, and took a mortgage, executed by the plaintiff, without the joinder therein of her husband, upon the property described in the complaint. Mrs. Gregory paid for the property purchased with the proceeds of that sold. This last mortgage, it is averred, was executed in the State of Michigan, both parties believing in good faith at the time, that the law of Indiana, as in Michigan, empowered a married woman to encumber her separate real estate without the joinder of her husband. But for such belief, the defendant says he would not have released his mortgage on the Michigan property and received that on the property in Indiana."

In the case of *Strohm* v. *Good*, 113 Ind. 93, it was held that Mrs. Good, the appellee, held a vendor's lien upon the real estate there involved. The facts in that case, as given in the opinion, are as follows: "On the 27th day of April, 1883, Magdalena Good was the owner of a parcel of land, and on that day she and her husband entered into a written contract with Joseph Strohm, wherein she agreed to sell and convey it to him. Among other promises forming part of the consideration agreed to be paid for the land, was a promise on the part of Joseph Strohm to assume and pay a mortgage previously executed by Magdalena Good to Solomon Stahley. This mortgage covered the land purchased by Strohm, and also other lands of the mortgagor. The contract, as originally drawn, provided that Joseph Strohm should receive a deed on or before the 1st day of July, 1883, but, by a subsequent writing, the contract was so modified as to provide that he should receive a deed when he had paid one-half of the mortgage assumed by him. Prior to the time of the maturity of the mortgage debt, Magdalena Good desired to remove the encumbrance of the mortgage from the real estate embraced in it, but which was not sold to Strohm, and an oral agreement was entered into between her and Strohm wherein it was stipulated that if she would pay the

mortgage debt, he would, when the first of the notes evidencing it became due and the deed was ready for delivery, pay one-half of the mortgage debt, and execute a mortgage for the remainder upon the real estate conveyed to him. Relying on this promise of Strohm, the appellee caused her agent, Isaiah Good, to pay the Stahley mortgage with his own money, agreeing with him that he should be repaid in accordance with Strohm's contract. Strohm requested that his wife, Mary Strohm, should be substituted as grantee, and this was done in the deed executed by the appellee and her husband. The deed was delivered on the 24th day of January, 1884, and was executed to Mary Strohm, the wife of Joseph Strohm, as requested by the latter. Of the contract between him and his vendor Mrs. Strohm had full knowledge, and she paid no consideration. Joseph Strohm repudiated his promise and refused to pay one-half of the amount of the mortgage debt in money, and also refused to execute a mortgage for the remainder." It is said in that case : " Mrs. Good had a right to protect her property by paying the mortgage, and, under the verbal contract, she had a right to have her *lien kept alive.* Until Strohm paid the purchase-money, as he had agreed to do, the lien remained in life, binding the land in his hands and in that of his wife, who claimed through him. There was no surrender or merger of this equitable lien, and it remained in force for the protection of the vendor."

The case of *Nichols* v. *Glover,* 41 Ind. 24, is summed up by the court, in a nutshell, as follows : " The question in this case resolves itself into this : If A. owes B. and A. conveys land to C., and has a lien for the purchase-money on the land so conveyed, and they all meet together and agree that C. shall execute his note to B. for the unpaid purchase-money, instead of giving the note to A., which is done, and B. releases A. from his debt, has B. a lien on the land conveyed by A. to C. for the purchase-money? We hold that he has. It is clear that if C. had given his note to A. for

the unpaid purchase-money, A. might have assigned it to B. and thus transferred his vendor's lien to B. Or, if no note had been given by C. to A. for the purchase-money, yet A. might have, by a written instrument, assigned his vendor's lien to B."

A vendor's lien can not be created by agreement between the parties, but exists by operation of law. Jones in his valuable work on liens, at section 1064, says: "This lien does not spring from any agreement of the parties, and is wholly independent of any such agreement. Moreover, the fact that there is a verbal agreement of the parties that the vendee shall reconvey the land if he does not pay the purchase-price, does not prevent the enforcement of the lien; for such an agreement is void under the statute of frauds." See *Gallagher* v. *Mars*, 50 Cal. 23.

Where a vendor's lien once arises, it may be kept alive or waived by the agreement of the parties, but can not be thus created. Jones Liens, sections 1089–1090; *Strohm* v. *Good*, *supra;* *Yaryan* v. *Shriner*, 26 Ind. 364.

"Whenever the nature of the transaction is such that the existence of a lien is repelled, and consequently the lien does not arise by implication or operation of law, evidence can not be given of the declaration of the purchaser that the vendor would have a lien; for a right to charge lands dependent upon the agreement of the parties must be manifested by writing; it can not rest in parol." Jones Liens, section 1064. See section 70; *Printup* v. *Barrett*, 46 Ga. 407; *Stringfellow* v. *Ivie*, 73 Ala. 209.

As a vendor's lien must arise by implication, a lien which depends upon the agreement of the parties is not a vendor's or grantor's lien. "A lien reserved is a lien by contract. A lien for the purchase-money expressly reserved by a vendor in his deed of conveyance is a lien created by contract, and not by implication of law." Jones Liens, section 1111. So, also, is a mortgage lien a lien by contract. It can in no other way be created. In Indiana a specific lien upon real estate,

dependent upon contract, can be created in but one of two ways; by reservation in the deed of the grantor; by mortgage duly executed by the owner; hence, the appellant, by the verbal agreement with Daniel, acquired no lien by contract. The further conclusion, therefore, must be that the said verbal agreement can have no controlling influence in the decision of the question before us.

Disregarding, as we do, the verbal contract between the appellant and Daniel, the situation is as follows:

McCoy and Thompson loaned a sum of money to Daniel Wood with which to make a purchase of real estate; to secure the loan the appellant became Daniel's surety to McCoy and Thompson; Daniel purchased the real estate, paid the money borrowed to the vendor, and with the appellant's consent, caused a deed to be executed to the appellee Martha.

Had the appellant loaned the money to Daniel to make the payment he would not have been entitled to a vendor's lien.

. A mere loan of money in the purchase of land does not create a lien on the land as a security for its repayment. See Jones Liens, section 75; Collinson v. Owens, 6 G. & J. 4.

A lien will not arise in favor of one who advances money to pay the purchase-price for real estate purchased. Jones Liens, sections 75, 1067; Chapman v. Abrahams, 61 Ala. 108; Gray v. Baird, 4 Lea (Tenn.) 212.

In this last case the court said: " Be this as it may however, the court is of the opinion that the debt stayed by Marchbanks was not the purchase-money for the land. The land had been bought by Gray under a decree of the county court. He had paid for it. Hall had advanced or loaned him the money to pay for the land, and had taken his notes, retaining a lien on the face of them on his land. These notes were the basis of the judgment stayed by Marchbanks. This could in no sense be held to be the purchase-money of the land. That had been paid by Gray. This was a debt for

borrowed money, advanced or loaned, it is true, to pay for the land, but still but a debt for loaned money. The lien on the face of the note did not make it such. That was a form of security carried out by the parties themselves, but is not a vendor's lien, but one by contract."

If money advanced to pay for real estate will not give the lender the right to enforce a vendor's lien, for. stronger reasons may it be asserted that such a lien will not be implied in favor of the surety who signs a note given for borrowed money to pay for real estate.

When McCoy and Thompson loaned the money to Daniel Wood it became his money absolutely. He was under no legal obligation to purchase the real estate, and if he did so he might, or might not, as he saw proper, pay the money to the vendor. He could have used the money for any other purpose at his pleasure.

The transaction was one to which the appellant was not a party except that he loaned his name to Daniel Wood. It was a transaction between McCoy and Thompson on the one side and Daniel Wood on the other.

After the note had been executed to them, McCoy and Thompson would no more have been justified in paying the money over to the appellant, except upon the order of Daniel, than to have paid to the appellant any other money in their hands belonging to Daniel without such order.

It was Daniel, therefore, who furnished the purchase-money, and not the appellant. This seems to be clear; and as the appellant paid no part of the purchase-money he has no shadow of a claim to a lien on the land. His position is the same as that of any other general creditor. But if the appellant, because of the parol agreement made between Daniel and himself, was entitled to enforce a vendor's lien as against a purchaser of the real estate with notice of his lien, or as against a mere volunteer, it is probable, in view of the rule as declared in *Wert* v. *Naylor*, 93 Ind. 431, that

Mrs. Wood would be regarded as a purchaser for value without notice, but as to this we decide nothing.

We find no error in the record.

Judgment affirmed, with costs.

Filed June 18, 1890; petition for a rehearing overruled Sept. 17, 1890.