MILLER, ADMINISTRATOR, ET AL. *v.* MILLER, ADMINIS-
TRATRIX, ET AL.

[No. 12,069.　Filed February 3, 1926.　Rehearing denied June 22,
1926.　Transfer denied June 22, 1928.]

*Chauncey W. Duncan, Wolf & Barnes, C. W. Roll* and *George B. Shenk,* for appellants.

*William J. Henley, Donald L. Smith, John D. McGee* and *William L. Newbold,* for appellees.

McMahan, J.—Appellee Lena Miller, as administratrix of the estate of Pleasant A. Miller filed a petition for the sale of certain real estate for the purpose of paying debts. Henry C. Miller was made a defendant, it being alleged that he claimed to have an interest adverse to the administratrix and heirs of the decedent. The Equitable Life Assurance Society, the Rush County National Bank, the Building Association No. 10 of Rushville, Farmers' Trust Company of Rushville, each having mortgages upon certain parts of the real estate were made defendants. There was a prayer that the respective liens attach to the funds arising from the sale of the real estate covered by the several mortgages. About a month after being served with the summons, Henry C. Miller died intestate, without having entered an appearance. William H. Miller, administrator of his estate, and the other appellants who are his heirs were then made defendants. These defendants other than the administrator filed an answer in denial and a cross-complaint alleging that Henry C. Miller had paid $17,676.67 which was alleged to have been one-half of the purchase price of the real estate, when the land was conveyed to the decedent, Pleasant A. Miller, and asking that they be declared to have a vendor's lien and that the same be foreclosed.

Six or seven weeks after the evidence had all been heard and the cause taken under advisement, William H. Miller, as administrator of the estate of Henry C. Miller, also, by leave of the court, filed a cross-complaint alleging payment of part of the purchase price of the

real estate by his decedent and asking for the foreclosure of a vendor's lien. The court thereupon, without any answer being filed to this cross-complaint, and without any further evidence, signed and filed a special finding of facts which, so far as necessary to an understanding of the questions involved in this appeal, are, in substance, as follows:

Pleasant A. Miller, at the time of his death, owned certain described real estate in the city of Rushville on which he and his wife had theretofore placed three mortgages, one to appellee Building Association to secure a loan of $4,000, on which there is a balance of $4,188 due and unpaid; one to the Farmers' Trust Company, on which there is a balance of $1,789 due and unpaid, and which is junior to the Building Association mortgage, and another to the Rushville National Bank, on which there is a balance of $1,391 due and unpaid, and which is junior to the mortgage to the Farmers' Trust Company. Henry C. Miller was Pleasant A. Miller's uncle, and, after being divorced from his wife in 1916, came to Rushville, and thereafter roomed and boarded with his nephew, Pleasant A. Miller, until January 27, 1923, when the latter died. After that time Henry C. Miller continued to make his home with appellee Lena Miller, widow of Pleasant A. Miller, until his death, intestate, June 29, 1923. Appellants are the heirs of Henry C. Miller, and appellees, other than the three mortgagees, are the heirs of Pleasant A. Miller.

On August 29, 1919, one Leslie B. Brown was the owner of a 212-acre farm in Rush county, theretofore owned by Pleasant A. Miller, and which Brown on August 5, 1919, had sold to John G. and David Hammond, and had signed a deed for the same, which deed had been placed in escrow, to be delivered February 1, 1920, on payment of the purchase price. On August 29, 1919, Brown, the two Hammonds, and Pleasant A.

Miller entered into a written agreement, in which, after reciting that the Hammonds had resold the said farm to Pleasant A. Miller for $42,400 and that in order to save expense and multiplicity of deeds, it was agreed that Brown and his wife should execute a deed to Pleasant A. Miller and place the same in escrow, to be delivered on payment by Miller of the balance of the purchase money, February 1, 1920, Pleasant A. Miller to assume the payment of mortgages aggregating $24,000, the deed to the Hammonds to be destroyed and not delivered. Brown and his wife, on August 29, 1919, signed a deed to Miller for said land and placed it in escrow in accordance with said agreement, with direction that it be delivered to Pleasant A. Miller on payment of $18,400, that being the balance of the purchase price. Henry C. Miller was not present when said agreement and deed were made and never discussed the purchase of said farm with the Hammonds or Brown. On January 31, 1920, the Hammonds, Brown and Pleasant A. Miller met at a certain law office for the purpose of concluding said sale, Henry C. Miller not being present. When calculation of the interest on the mortgages was made, it was found that the actual amount to be paid in cash by Pleasant A. Miller was $17,928.35. Pleasant A. Miller then left the law office and in about an hour came back and turned over checks aggregating $17,928.35 in payment of balance then due. Among the checks was one signed by Henry C. Miller on the Rush County National Bank for $17,676.67. The deed was then delivered to Pleasant A. Miller and recorded.

In order to procure the money to make said payment, Pleasant A. Miller made arrangements with appellee, Rush County National Bank, for a loan of $17,676.67 to be made to Henry C. Miller, at which time Henry C. Miller and Pleasant A. Miller informed the cashier of said bank that Pleasant A. Miller was buying the land

and that the money was to be used by Pleasant A. Miller for that purpose. At the time of making this loan, Henry C. Miller executed his note to said bank for $17,676.67, and pledged to the bank, as collateral security, Liberty bonds of the face value of $2,000, and a certain note and mortgage for $15,900.

In March, 1921, Pleasant A. Miller executed a note and mortgage to an Indianapolis bank to secure $7,000, for the purpose of paying the mortgage then held by the Equitable Life Assurance Society, and which was one of the mortgages which had been assumed by him when he purchased the land. This note and mortgage were later assigned to the Equitable Life Assurance Society, and the amount due thereon is $7,736. This mortgage is a first lien on the 212-acre farm.

The total purchase price of said 212-acre farm was $42,400 and was paid as follows: By Pleasant A. Miller assuming a mortgage for $17,425 thereon given to himself by Brown; by assuming a mortgage to the Equitable Life Assurance Society for $7,046.65; by check of Henry C. Miller to John G. Hammond for $17,676.67; and by check of Pleasant A. Miller for $251.68.

Prior to December 20, 1921, Pleasant A. Miller was indebted to the Rush County National Bank in the sum of $7,600 and desiring to borrow an additional amount of $2,400, he, on said last named date, executed his note to said bank for $10,000, and, his wife joining, gave a mortgage on the 212 acres, said mortgage being junior to the Equitable Life Assurance Society mortgage, the amount due thereon being $11,538. There is no evidence that any part of the $17,676.67 has ever been repaid to Henry C. Miller or to any one for him. The Rush County National Bank at all times knew that Henry C. Miller paid $17,676.67 on the purchase price of said farm. There is no evidence that Pleasant A. Miller ever gave Henry C. Miller any receipt, note, mortgage, or other

evidence of indebtedness for said $17,676.67. The note given by Henry C. Miller to the Rush County National Bank, January 21, 1920, to procure said money has not been fully paid, but has been renewed several times. The Liberty bonds and payment on the note put up as collateral have been applied on the said note of Henry C. Miller, so that the amount due thereon is $12,223, and is held by said bank as a claim against the estate of Henry C. Miller.

Henry C. Miller, subsequent to January 31, 1920, talked to numerous people concerning Pleasant A. Miller, saying, in substance, that he had given everything he had to the latter; that he had some money out and he had given it to Pleasant A. Miller to take care of; that all the money he had given to Pleasant A. Miller he expected him to have; that he did not expect any of his (Henry C. Miller's) children to have any of it; that, if he had not given the money to Pleasant A. Miller, the latter would have gone broke; that Pleasant A. Miller had been his best friend; that, after his folks had kicked him out, he came and made his home with Pleasant A. Miller; that, what money he had, he had given Pleasant A. Miller, expected to give him all he had left when he was gone, and did not expect his children to have any more of his property. Henry C. Miller worked on the farm, but there is no evidence whether for wages or not.

Upon these facts, the court concluded, as a matter of law, in substance, that the claims of appellants were unfounded, that they had no vendor's lien, that Pleasant A. Miller was the owner of the land, and that the same should be sold and the proceeds applied in payment of the debts of Pleasant A. Miller according to the priority of the several mortgages. From the judgment, appellants appeal and contend that the court erred in the several conclusions of law and in overruling their motion for a new trial.

Appellants first contend that, under the facts found, a vendor's lien was created in favor of Henry C. Miller, and, in support of this contention, say:

"If upon looking through the transaction it appears that the debt which the party owes is in fact part of the purchase price of the land acquired in the transaction out of which the debt arose, a lien will be declared upon the land in favor of the person to whom such debt is due."

The only questions presented by appellant relate: (1) To the first and second conclusions of law, denying that William H. Miller, administrator of the estate of Henry C. Miller, has any interest in the real estate upon which he claims to have a vendor's lien, and denying him a vendor's lien; and (2) to the overruling of appellants' motion for a new trial.

No question is presented or argued concerning the right of the administrator of Pleasant A. Miller's estate to sell the land. The appeal is from the action of the court in denying appellant's claim and decreeing that he has no lien on the funds arising from the sale. In support of the contention that the court erred in said two conclusions of law, appellants, after referring to the borrowing of the $17,676.67 from the Rush County National Bank, the making of the check for that amount by Henry C. Miller, payable to John G. Hammond instead of to Pleasant A. Miller, and the delivery of such check to the latter, to be by him delivered to John G. Hammond, say: Henry C. Miller was, in fact, the vendor when Hammond made the deed to Pleasant A. Miller, and that, having furnished the purchase money which was paid to the vendors, Henry C. Miller was entitled to the full benefit of a vendor's lien.

In *Johns* v. *Sewell* (1870), 33 Ind. 1, cited by appellants, one West purchased certain real estate from Donaldson, giving the latter his note for part of the pur-

chase money, which note Donaldson assigned to Sewell. Donaldson held the property by title bond from Lacy, to whom he had fully paid the purchase money and who held the legal title. Donaldson directed Lacy to convey to West. By procurement of West, Lacy conveyed to West's wife without Donaldson's knowledge or consent. Mrs. West was a volunteer, paying nothing. Johns later purchased the property from West, taking a deed from West and wife, with notice that West owed the unpaid purchase money for which the note had been given. It was there held, under those facts, that Donaldson was the equitable owner of the land, that he had a vendor's lien for the unpaid purchase money, and that this lien passed to the assignee of the note.

In *Otis* v. *Gregory* (1887), 111 Ind. 504, 13 N. E. 39, relied on by appellants, Mrs. Gregory and her husband, being indebted to Otis in the sum of $460, gave him a mortgage on Mrs. Gregory's separate property in Michigan. Mrs. Gregory afterwards sold her Michigan property and purchased certain land in Indiana. In order to make such purchase, it was necessary for her to use the entire purchase money arising from the sale of her Michigan property, including the amount due Otis on his mortgage. Otis agreed to release his mortgage and to permit Mrs. Gregory to use the amount due him in paying for the Indiana property, she agreeing to give him a mortgage on the latter when the transaction was completed. Otis released the mortgage on the Michigan property and took a mortgage on the Indiana property executed by Mrs. Gregory, her husband not joining therein. The mortgage of the Indiana land was executed in Michigan, all the parties believing that the law of Indiana as in Michigan authorized a married woman to execute such a mortgage without her husband joining. Sometime thereafter, Mrs. Gregory commenced an action against Otis to quiet her

title. The court, after holding the mortgage to Otis void, said:

"If, upon looking through the transaction, it appears that the debt which the party owes is in fact part of the purchase price of land, acquired in the transaction out of which the debt arose, a lien will be declared upon the land in favor of the person to whom such debt is due."

And, after summarizing the facts, the court further said:

"It was, therefore, agreed that the appellant should release his mortgage on the property sold, so as to enable the appellee to receive the whole of the purchase-money, which was to be applied in payment of the property purchased, so that, instead of owing her vendor part of the purchase price, she would owe the appellant the amount which he had in effect paid, or transferred to her to be paid, on the LaPorte county land. . . . The controlling question in cases of this character is, whether or not the debt owing is, as to the debtor, the balance due for purchase-money. . . . The appellant having, at the appellee's request, in effect paid five hundred dollars of the purchase money for her under an agreement that he was to hold a lien upon the land purchased, although the particular lien contemplated has miscarried, he will be subrogated by a court of equity to the rights of the vendor who received his money."

There, Mrs. Gregory was actually indebted to Otis, whose debt was secured by a mortgage which was released on the agreement that he was to have a mortgage on the Indiana land. This agreement was an important fact in the case. In the instant case, there was no agreement that Henry C. Miller should have any kind of a lien, and it has been held that a lien will not arise in favor of one who loans or advances money to another to pay the purchase price of real estate. *Wood* v. *Wood*

(1890), 124 Ind. 545, 24 N. E. 751, 9 L. R. A. 173.

Appellants make no claim that Henry C. Miller loaned the $17,676.67 to Pleasant A. Miller, or that there was any agreement on the part of the latter to repay the said sum to the former. They simply claim that the former furnished the amount named to enable Pleasant A. Miller to buy and pay for the land. There is no finding that the money was furnished at the instance and request of Pleasant A. Miller, or whether Henry C. Miller voluntarily furnished the money without any request or promise to repay on the part of Pleasant A. Neither is there any finding that the latter was indebted to the former for the money so furnished. Indeed, the court in the twelfth conclusion of law and in the judgment expressly states that there is no determination of the question of gift or debt and that he only decided that there was no trust or vendor's lien. Cases where the money was furnished the purchaser under a promise to repay and with an agreement that the party furnishing the money shall have a mortgage or lien to secure the repayment of the money, and where there is a refusal to give the mortgage under a state of facts sufficient to show fraud, are not in point in the instant case.

In *Newman* v. *Newman* (1921), 103 Ohio St. 230, 133 N. E. 70, 18 A. L. R. 1089, Herman Newman advanced $5,000 to Edward Newman, since deceased, for the express purpose of buying certain real estate, the latter agreeing orally to give the former a mortgage on the land when purchased. Edward executed his note for $5,000, and, without executing the mortgage, caused the title to the land to be taken in the name of his wife, who paid nothing for the land. After the purchase of this land, Edward, desiring to buy an adjoining tract of land, made arrangements with Herman, who was his father, by which the latter loaned him $4,900, Edward agreeing to give his father a mortgage for $9,900, the amount of

both loans, the title to this land was also taken in the name of Mrs. Newman. It was conceded that the son was an honest and conscientious business man, and the father, on the witness stand, expressly disclaimed that the son had any intent to deceive or cheat him. There was no charge of fraud and no claim the father had been overreached by the son, and, on appeal, it was held that there was no resulting trust in favor of the father. Referring to a vendor's lien, the court said:

"They (counsel for the father) do not claim that the transaction created a vendor's lien. They concede, as obviously it must be conceded, that the father did not stand in the position of one having a vendor's lien."

The cases are not harmonious on the question whether one advancing money to buy real estate, under an oral agreement for a mortgage on the property as security, is entitled to subrogation to the vendor's lien, or to some other form of equitable lien where the vendee refuses to carry out his agreement to give the mortgage. See *Magee* v. *Magee* (1869), 51 Ill. 500; *Poole* v. *Tannis* (1908), 137 Wis. 363, 118 N. W. 188; *Foster Lumber Co.* v. *Harlan County Bank* (1905), 71 Kans. 158, 80 Pac. 49, 114 Am. St. 470, 6 Ann. Cas. 44; *Hughes* v. *Mullaney* (1904), 92 Minn. 485, 100 N. W. 217; *Williams* v. *Rice* (1886), 60 Mich. 102, 26 N. W. 846; *Cole* v. *Cole* (1874), 41 Md. 301. For cases holding that the right to a vendor's lien or equitable lien does not arise in favor of one advancing money to buy land under an oral agreement for a mortgage, see *Campan* v. *Molle* (1899), 124 Cal. 415, 57 Pac. 208; *Durant* v. *Davis* (1873), 10 Heisk. (Tenn.) 522; *Wooldridge* v. *Scott* (1879), 69 Mo. 669; *Marquat* v. *Marquat* (1853), 7 How. Pr. (N. Y.) 417; *Chapman* v. *Abrahams* (1878), 61 Ala. 108.

In *Barrett* v. *Lewis* (1886), 106 Ind. 120, 5 N. E. 910, Mrs. Lewis sold certain land, taking back a mortgage to

secure the payment of the unpaid purchase money. She foreclosed this mortgage, and, at the foreclosure sale, became the purchaser. Before the period of redemption expired, she sold and assigned the certificate to Mrs. Barrett, who paid part of the consideration in cash and gave her notes for the balance, and who later received a sheriff's deed and went into possession of the land. The note stated that it was given for "purchase money for real estate."

In *Pruitt* v. *Pruitt* (1883), 91 Ind. 595, Nancy Pruitt, being the owner of certain real estate, conveyed the same to her son Alexander. The consideration named in the deed was "affection," and the agreement of Alexander to pay to his brother Joseph $300 when the latter became twenty-one, Mrs. Pruitt retaining the possession and use of the land during her life. Alexander accepted the deed and, as evidence of his acceptance and agreement therein, also signed and acknowledged the deed and caused the same to be recorded. He afterwards sold the land. The $300 not having been paid, Joseph brought suit against Alexander and his grantees to enforce a lien upon the real estate. Under these facts, it was held that the $300 was purchase money, and that it became a lien on the land in favor of Joseph, and the record of the deed was constructive notice to the grantees from Alexander.

In *Dwenger, Bishop,* v. *Branigan* (1884), 95 Ind. 221, Branigan furnished the money and paid for certain real estate for the use of a church, under an agreement that he was to have and hold such real estate and have a lien thereon and have the equitable title thereto until he was repaid, and, under such agreement, Branigan, in conformity with the rules of the Church, had the deed made direct to the bishop of the church, who was a mere volunteer and paid nothing. It was there held that, as between Branigan and the bishop, the former was the

equitable vendor, and had an equitable lien which could be enforced against the real estate in the hands of the bishop.

In *Scott* v. *Edgar* (1902), 159 Ind. 38, 63 N. E. 452, where a purchaser of real estate, having paid nothing thereon, conveyed the same to a third party upon the agreement that the first purchaser should be released from his liability on account of the purchase and that the last purchaser should pay the consideration therefor, it was held that the transaction was the same in legal effect as if the first vendor had sold and conveyed the land to the third person and that he was entitled to a vendor's lien for the unpaid purchase money. Without reviewing any of the other cases cited by appellants, it is sufficient to say that they are all based upon facts quite different from the facts in the instant case and are not of controlling influence. It is important to keep in mind that there is no finding that Henry C. Miller loaned or advanced the money to Pleasant A. under an agreement that he should have a lien on the real estate in question. As heretofore stated, there is no finding that he loaned or advanced the money to him.

In *Carey* v. *Boyle* (1881), 53 Wis. 574, James Carey purchased certain land for the benefit of his brother Patrick Carey. James paid for the land. The deed was made to Patrick but delivered to James. Patrick paid part of the purchase money to James in land and by executing notes for the balance. Patrick, while occupying the land as a homestead, died, leaving a widow, who soon thereafter died without issue, and Boyle, as heir to the widow, claimed the land. The court, in order to apply the proper equitable principles, made the following observations on the facts: (1) While James, strictly speaking, was not the vendee in the sense of being the grantee in the first place, or the vendor in the sense of being the grantor to Patrick, he was in the common ac-

ceptance of the term the purchaser from the seller and the seller or vendor to his brother who purchased from him; (2) that there was no privity except by deed between Patrick and the original vendor, and no contract of sale or purchase as between them; (3) that the contract of purchase by Patrick from James was materially different from the contract between James and the grantor; (4) that the consideration or purchase money, so far as Patrick was concerned, was that which passed or was to pass directly from him to James, independent and distinct from that which passed from James to the grantor; (5) that so far as James and Patrick were concerned James was the seller and Patrick the purchaser; and (6) that the case was stronger than if James had furnished to Patrick the purchase money to be paid by the latter to the grantor in the deed on his own purchase from such grantor, and that the circumstances were, in substance, the same as if James had taken the deed to himself and then deeded to Patrick. Following this line of reasoning, the court said:

"And there is no substantial reason why the principle and authorities which apply to a vendor's lien for the purchase money, should not directly apply to this case. If this is so, then there is no contention as to the right of the respondent James to enforce his lien for the unpaid purchase money upon the remaining forty acres, divested of the homestead right of the appellant, which they inherited from the widow of James."

After recognizing that the courts were in conflict as to whether the extension of the right beyond the immediate parties to the sale and to third parties furnishing the purchase money, and that the weight of authority was against such extension, the court said, that, in so far as Wisconsin was concerned, it was settled that such third persons were entitled to the benefit of the vendor's lien.

In *Jones* v. *Parker* (1881), 51 Wis. 218, cited by the court in the Carey case, with the statement that the transactions were quite similar, a mortgage had been given to the party furnishing the money. The mortgagor sold the land, the purchaser assuming and agreeing to pay the mortgage debt. The new purchaser desiring longer time to pay the mortgage, it was agreed that the first mortgage should be released and a new one executed. The purchaser's wife was not present and the holder of the mortgage refused to release the first mortgage and take a new one, but, on being assured that under the circumstances the signature of the wife was not necessary, he released the first and accepted the second mortgage without the signature of the wife. The action was to foreclose the mortgage, and the question at issue was whether the mortgage so taken was entitled to priority over a mortgage given the same day to the maker of the original mortgage to secure a part of the purchase money when he sold the land.

In *Poole* v. *Tannis* (1908), 137 Wis. 363, 118 N. W. 188, 864, a mother advanced her son $900 to be used in purchasing a lot and in erecting a house thereon, with an agreement that the repayment of the sum advanced should be secured by a mortgage on the house and lot. Three hundred dollars of the money so advanced was expended in the purchase of the lot and $600 in the erection of the house. The son having refused to execute the mortgage, the mother filed her complaint for specific performance. The trial court, having held the agreement to execute the mortgage was too indefinite to authorize a decree of specific performance, decreed that the mother had a vendor's lien for the $900 and that the same should be foreclosed. The Supreme Court, on appeal, after stating that the mother and son did not occupy the relation of vendor and vendee, held that the judgment awarding a vendor's lien was not well founded.

But, in view of the fact that the mother had advanced the money upon the understanding that its payment should be secured by a lien on the premises, the court held she was entitled to an equitable lien on the property instead of a vendor's lien.

Appellants, in support of their contention, would have us assume that the money was advanced by Henry C. Miller to Pleasant A. Miller at the latter's request, and that the latter became the debtor of the former. But, so far as appears from the special finding of facts, Henry C. was no more than a mere volunteer.

Appellants say where land is purchased and paid for with the money of one person and the title taken in the name of another, a trust results in favor of the person paying for the land, and, in this case, "the real estate was bought and half the purchase price paid by Henry C. Miller." The facts found do not support this contention. The appellants, who are heirs of Henry C. Miller, contend that in case it be held that the appellant administrator is not entitled to a vendor's lien, they should be adjudged to have an interest in the land by virtue of a resulting trust. This is based on the theory that the land was purchased and, as they say, "one-half" of the purchase price paid by their father, Henry C. Miller. Without again reviewing the facts, it is sufficient to add that the claim that Henry C. Miller paid one-half of the purchase price cannot be sustained. The purchase price was $42,400. Henry C. Miller's check was for $17,676.67, leaving a balance of $24,717.33 paid by Pleasant A., exclusive of the $17,676.67 check. Henry C. did not furnish one-half of the money. Nor can it be said he furnished an aliquot part of it. And, in this connection, it is to be remembered there is no finding that appellants' father paid any part of the purchase price. The facts, as found, do not compel the conclusion that there was an actual payment

of the purchase price by Henry C. to the amount of the check. His actions, as found, are not inconsistent with a gift to Pleasant A. of the amount of the check. There is no finding that there was any agreement between Pleasant A. and Henry C. concerning the purchase of the land and to whom the conveyance should be made. There was no fraud on the part of Pleasant A. and no violation of any agreement by him. He never promised to pay the amount of the check back to Henry C. and no facts are found which show an implied agreement so to do. Pleasant A. purchased the land and, we must presume, took the title to himself with the knowledge and consent of Henry C., without any agreement or intention that there should be any trust in connection therewith. Under the facts, the court correctly concluded that the land was not impressed with any trust and that there was no vendor's lien on the land in favor of appellants or either of them. It appears to have been the intention of the court to leave the question as to whether Pleasant A. was indebted to Henry C. open for further determination, and we are not called upon to pass upon that question.

The cases cited by appellants in support of the contention that the land was impressed with a trust are, with scarcely an exception, cases where one person furnished the money with which to purchase land, and, without such person's consent, the title was taken in the name of another, or where there was an agreement that the title should be taken in the name of the one furnishing the money. In order to establish a trust in real estate by parol, the facts must be such as to bring the case within one of the three provisions of §13449 Burns 1926.

The court did not err in its conclusions of law, nor in overruling the motion for a new trial.

Judgment affirmed.